206 So.2d 446 (1968)
Harvey WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 1329.
District Court of Appeal of Florida. Fourth District.
February 5, 1968.
Alcee L. Hastings, Fort Lauderdale, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and Fred T. Gallagher, Asst. Atty. Gen., Vero Beach, for appellee.
*447 PER CURIAM.
Appellant, Harvey Williams, jointly with co-defendants Warren Thornton, George D. Anthony and Nimrod Grace, was charged with attempted robbery on 19 August 1966. They were tried in the Court of Record for Broward County, Florida, found guilty by jury verdict and sentenced to five years at hard labor. The appellant's post-trial motion for a new trial was denied.
The broad question presented is the sufficiency of the evidence to support the jury verdict.
The prosecuting witness, William Riebley, testified that at 11:45 p.m. on the night of 19 August 1966 he was in his office at the Coral Rock Bar in Hallandale, Broward County, Florida, looking out the window and saw a blue and white Oldsmobile pull up by an ice house twenty feet north of the office. The vehicle stayed for about five minutes with its lights off and no one got out. Five to ten minutes later the same vehicle came back, stopped at the same place, and the prosecuting witness saw it was occupied by four Negroes. His suspicion was aroused to the extent that he got his gun. The car again pulled off after a few minutes and disappeared from Mr. Riebley's view. Mr. Riebley saw no one get out of the car, but shortly after it pulled off, the defendant, Nimrod Grace, entered the premises, approached the prosecuting witness who was near his cash register, raised a double barrelled shotgun and fired at the prosecuting witness who ducked. Grace immediately fled.
Burton Shepard, a Hallandale police officer, testified that at about 11:45 p.m. on 19 August 1966 he was driving a patrol car north on Federal Highway when he observed a blue and white Oldsmobile parked next to the "ice plant" near the Coral Rock Bar. He observed four Negro males in the vehicle. He continued north for seven blocks and turned to come back. As he reached the front of the Coral Rock Bar he heard shots and saw a Negro male run from the bar and into the east-west alley north of the bar. He turned his vehicle again and proceeded into the alley in time to see what he thought was the blue and white Oldsmobile turn south from the west end of the alley three blocks away. As he was turning his vehicle to enter the alley he radioed a description of the blue and white Oldsmobile and that an armed robbery had occurred. By the time Shepard reached the end of the alley he received a radio message that a vehicle fitting the description was stopped at Beach Boulevard and Federal Highway, two and one-half blocks from the Coral Rock Bar. The officer proceeded to this location and identified the vehicle as the one he had seen at the Coral Rock Bar. When he arrived Officer Stein was getting three Negro males out of the car. They were appellant Harvey Williams, Warren Thornton and George D. Anthony. Nimrod Grace was not in the automobile. The officer said there was no doubt in his mind that the vehicle contained four persons when he saw it by the ice house.
Later that night Mr. Riebley viewed the car that was stopped by Officer Stein and identified it as the one he had twice seen in front of his bar shortly before the attempt. Mr. Riebley made no identification of the people he saw in the automobile, but on 20 August 1966 identified Nimrod Grace as the person who entered the bar and fired at him. He denied ever knowing Grace before the occasion in question.
Richard Stein, a reserve police officer for the City of Hallandale, testified that while he was on duty at 11:45 p.m. on 19 August 1966 he heard Officer Shepard's radio message. Stein was then about six blocks from the Coral Rock Bar and headed there. En route, he spotted the 1956 blue and white Oldsmobile stopping at a light at Beach Boulevard and Federal Highway. He pulled up beside the vehicle and ordered the occupants out. Stein testified that Harvey Williams, Warren Thornton and George D. Anthony were in the car when it was stopped and that appellant Harvey Williams was driving.
*448 John Cataldo, a detective with the Hallandale Police Department, began his investigation shortly after the trio was arrested. He questioned each of the three independently. The appellant and George D. Anthony told Officer Cataldo that there had only been the three of them in the car and that they were coming from Dania to the Palms Club in Hallandale. The third defendant, Warren Thornton, when questioned appeared quite nervous and at first gave a story consistent with that of appellant and Anthony. However, he admitted knowing a "Nimrod" but did not know his last name. Thornton at first denied that Nimrod was in the car, but then changed his story and admitted Nimrod had been in the car. Officer Cataldo's testimony on this critical point is:
"* * * I asked him right out, `Do you know a guy named Nimrod?'
"He hemmed and hawed a little  said, `I do'.
"I said, `Nimrod what?'
"He said `That is all I know him by  Nimrod'.
"I said, `This is the guy that was in the car with you?'
"* * *
"THE WITNESS: At first, he said, `No  just the three of us'.
"I said, `Come on. You might as well tell me the truth, because I don't believe you. This Nimrod  he is the other one,' and he said `Well, I'll tell you'  he said, `There was four of us in the car. We came down. This Nimrod said he wanted to go in this bar a minute. He said something about the man owing him money, or something, so we pulled over and parked, and we (sic) went in the bar.'

"I asked him did he see a gun, and he said he didn't know what he was going in the bar for. He did go in the bar, and the other three waited in the car, and he stopped there and said, `No'  he said, `I am too involved in this  I am in this thing too deep  I am not going to say any more', and that is where he stopped, and I didn't push the issue any more. I let it go right there." (Emphasis added.)
No objection was made by the appellant to this testimony.
Officer Cataldo located Nimrod Grace at 5:00 to 5:30 a.m. on 20 August 1966 at a restaurant in Dania and arrested him. On questioning by Cataldo, Grace admitted knowing the other three defendants and that he had been with them earlier in the night of 19 August 1966 in Dania, but was dropped off by them. He denied having been in Hallandale that night. He said he had owned a sawed off shotgun but sold it several months before to "Junebug" whose proper name and address were not known. No objection was made by appellant to the above recited admissions made by Nimrod Grace to Officer Cataldo.
The shotgun was never found and Nimrod Grace never admitted the attempted robbery. None of the defendants testified.
It is obvious that the appellant did not personally commit the crime of attempted robbery. If he is guilty, it must be under Section 776.011, F.S. 1965, F.S.A., as one aiding in the commission of the attempted armed robbery. The narrow question in this case is the sufficiency of the evidence to show that the appellant Harvey Williams drove Nimrod Grace to the Coral Rock Bar pursuant to a preconceived plan to commit a crime. If so, he is guilty as a principal in the first degree, Hornbeck v. State, Fla. 1955, 77 So.2d 876, 878; Gilday v. State, Fla.App. 1964, 168 So.2d 205.
As to appellant Williams' participation in the alleged crime, all evidence was circumstantial. In such a case the evidence must exclude every reasonable hypothesis except the guilt of the accused, Chason v. State, 1941, 148 Fla. 540, 4 So.2d 691. The same formula is stated in different *449 words in Harris v. State, Fla. 1951, 53 So.2d 827, 828, where the court said to warrant a conviction based on totally circumstantial evidence, the proof must be inconsistent with any reasonable hypothesis except defendant's guilt and must point to guilt beyond a reasonable doubt, and evidence showing only a probability of guilt is insufficient.
Although the credibility of the witnesses and the weight of the evidence is within the sole province of the jury, the sufficiency of the evidence to support a verdict is within the court's determination. Bailey v. State, 1918, 76 Fla. 213, 79 So. 730; Chaffin v. State, Fla.App. 1967, 204 So.2d 22. To illustrate the appellate court's power to review the evidence, the Florida Supreme Court, in Raybon v. State, Fla. 1954, 75 So.2d 7, reversed a conviction based upon circumstantial evidence because, "* * * although the proof might be said to be consistent with his guilt, we cannot hold that it is inconsistent with any other hypothesis. * * *"
In like vein is the quote from Sykes v. United States, 5 Cir.1966, 373 F.2d 607, 609:
"Our duty in questioning the sufficiency of circumstantial evidence is to take the view of the evidence must favorable to the government, and to question whether the reasonable inferences to be drawn from such evidence are inconsistent with every reasonable hypothesis of innocence. * * *"
Looking at all the evidence there is an hypothesis consistent with Williams' innocence, and not precluded by any of the evidence. It is that Williams was riding around in the Oldsmobile on the night in question with Nimrod Grace and the other two males; that they drove to the bar in question; that Grace went into the bar alone after telling his companions, including Williams, that his purpose was to see a man in the bar who owed Grace some money; that Williams did not see a gun in Grace's possession and that Grace either had the shotgun concealed from Williams' view or had it secreted somewhere near the scene; that Williams did not know of Grace's design to rob and that Williams did not plan to aid or assist Grace in any way; that, upon hearing the shot, Williams and his companions became frightened and left the scene without Grace.
In short, it would be permissible to be highly suspicious of Williams and his conduct and to condemn him for his selection of Grace as a companion. However, it cannot be said that the evidence is sufficient to convict Williams of attempted robbery. The State has not carried its burden of proving the essentials of the charge beyond a reasonable doubt and necessarily then the verdict rests uncomfortably upon only suspicion and conjecture.
The judgment here appealed is reversed and the case remanded for a new trial.
Reversed.
WALDEN, C.J., REED, J., and WHITE, JOSEPH S., Associate Judge, concur.