383 So.2d 924 (1980)
STATE of Florida, Appellant,
v.
William H. BOLTON, Appellee.
No. 79-1703.
District Court of Appeal of Florida, Second District.
April 23, 1980.
*925 Jim Smith, Atty. Gen., Tallahassee, and Eula Tuttle Mason, Asst. Atty. Gen., Tampa, for appellant.
Robert E. Jagger, Public Defender, Clearwater, and William G. Sestak, Asst. Public Defender, Dade City, for appellee.
CAMPBELL, Judge.
Appellee was indicted for second degree murder, tried by jury and found guilty. He did not testify in his own behalf nor offer any other evidence at the trial. Early in his opening argument, defense counsel stated to the jury:
As His Honor, Judge Ulmer, indicated this is both my opportunity and Mr. Mander's [Assistant State Attorney] opportunity to give you our ideas or concepts of what we think the evidence showed or might not have shown you and I guess the best place to start with that is at the beginning of the testimony that the State adduced from its various witnesses.
He then proceeded to argue about blood stains and lack of blood stains; classification of certain blood stains by type and lack of classification of others; ballistics tests on bullets test-fired from weapons and lack of such evidence in regard to the projectile causing the victim's death; fingerprint evidence and comparison and lack of it; failure of police officers to check for certain evidence that might have led them to conclude that other parties were also involved in the victim's death. Defense counsel concluded by arguing at length that the defendant was telling the truth in a tape recorded statement given to the police and played by the state at the trial. With respect to that recorded statement, defense counsel argued:
How did that blood get on his shirt and inside his boot if this gentleman was not telling the truth to Lieutenant Howell?
There can only be one answer, he was telling the truth. He was telling the truth throughout and they tried to trick him on three or four times they tried to trick him saying, come on now, Hubert, come on now, Hubert, Buck is gonna come around and he's gonna tell us. And what did he say? I did not cut him, I did not shoot him, I did not hurt him. I didn't kill anyone... .
Let's look at some of the things that the State didn't prove. Remember the tape, let's go back to the tape. Lieutenant Howell's saying to Mr. Bolton: Hubert, have you shot a gun lately? No, sir. When is the last time you shot a gun, Hubert? Six or eight months ago. Well, Hubert, remember that test I just gave you, that stuff I just put on your hands when we send that to the FBI Lab, it will prove whether you shot a gun recently. Where is that test? The State hasn't come in here and showed you any kind of test proving Mr. Bolton fired any gun. Where is this test they put on his hands that Lieutenant Howell testified to? Maybe it will show that he didn't fire any gun. Ask yourself that, why didn't the State put that on? Why didn't they put that on? Lieutenant Howell said we'll send it to the FBI and it will prove whether you fired a gun recently, it will prove whether you fired a gun recently. Where is it? Throughout that tape, Mr. Bolton as best he could and as best as the Zephyrhills Police Department were trying to get him to say, I did it, they even *926 said: Well, Hubert, if it was self-defense, let us know, and this man sat there and said: I didn't do it, I didn't do it. And the State has brought him in here and have they proved that he did it to you? I didn't do it, I didn't hurt anybody, over and over and over in a half hour over and over: I didn't hurt anybody, I didn't cut anybody, I didn't shoot anybody, over and over again. Well, Hubert, we'll prove it because we'll put this stuff on your hands, but they don't bring it in here and tell you people what that thing proved.
In its closing arguments, the state argued:
So at this point you may feel a little frustrated and a little clouded and after Mr. Sestak's first discussion with you, you may still feel that way because as any good defense attorney will do, he'll try to raise a smoke screen. He'll try to keep it clouded, he'll try to keep the procedural technicalities and the long, drawn out trial, and the bits and pieces clouded and throw things up in the air and try to leave you the impression that it's not clear what happened, which really isn't the case and I'll go into that shortly. But let me remind you that my burden of proof is not to prove just anything. The Judge will tell you that I have to prove the material elements of this crime, that's it. That's what I have to prove.
The Judge will tell you what each of those elements are. When you listen to Mr. Sestak and evaluate what he said already and what he says next time, you see if the things he's talking about really make a difference in this case, they really affect the material elements, or is he just throwing up a smoke screen? Just to give you an idea, let me go over a few things that he's mentioned to you already.
First of all, he never told you what his defense was. One of four things had to happen  (interrupted) (emphasis added).
That interruption in the above quote was an objection by defense counsel that "I don't have to prove anything." The trial judge had the jury cleared from the courtroom, called a bench conference with the attorneys, heard their arguments and defense counsel's motion for mistrial. The trial judge at that point had the court reporter read back to him the argument of the assistant state attorney. It is of note that defense counsel never specifically objected to the argument on the basis that it was a comment on the failure of the defendant to testify. Though admittedly it is a fine distinction and does not control this decision, his objection was repeatedly that the state had the burden of proof and that he was not required to do or say anything: "I can stand here mute." (emphasis added).
Immediately after the court reporter read the argument back to him, the trial judge denied the appellee's motion for mistrial. The state then continued its argument as follows:
Ladies and gentlemen, as I was saying, Mr. Sestak was simply throwing up a smoke screen, he wasn't addressing one of the four things that had to have occurred here. Either the defendant did it and it was an accident, the defendant did it and it was justified, both of which will be defined by the Judge. The victim killed himself, or the defendant did it unlawfully or somebody else did it. I guess it could have been five things.
After his conviction, appellee filed a motion for new trial, alleging as one of eight grounds:
The Court erred in refusing Defendant's Motion for a mistrial after the prosecutor's comment, in closing, that:
"Mr. Sestak (defense counsel) hasn't told us what his defenses are"
in lieu of the fact that the defense offered no testimony, did not put on a case, and did not invite the comment in Defendant's first closing argument.
The trial judge considered letters from both counsel which called the court's attention to various cases concerning whether or not a prosecutor's arguments contained statements calling attention to the failure of a defendant to testify. He denied the motion for new trial on all grounds except that quoted above. In granting the motion on that ground, the trial judge commented:

*927 The Court has carefully considered the citations of authority presented by both the Defense and the State and has concluded that there appears to be to some extent a split of authority as between District Courts of Appeal in the state of Florida with respect to the issue before the Court. Upon consideration, the undersigned finds controlling the case of Young v. State, Fla.App., 280 So.2d 13, (2nd Dist.Ct.App., 1973), and based upon said opinion, makes the further finding that, taken in full context, the statement of the Assistant State Attorney that is in issue falls outside of the acceptable boundaries that have been established with respect to prosecutorial comments and that same constitutes clearly a comment upon the failure of the Defendant, WILLIAM H. BOLTON, to testify as a defendant in his criminal case.
While fully recognizing and endorsing a trial court's wide discretion in granting new trials, there are several reasons why the granting of the motion for a new trial here should be reversed. First, one reason for the wide discretion given trial judges in granting a new trial based on a motion such as was made here is that the trial judge is present when the objected to statements are made. They observe what has taken place, hear the inflections and mannerisms of counsel and are able to make an immediate determination of the effect of the comments on the jury. Here, the trial judge had the remarks of the state read back to him and immediately denied the motion for mistrial. It was not until the subsequent motion for new trial and his consideration of what he considered a split of authority that the trial judge in an obvious exercise of caution granted the motion. Although he found the decision of this court in Young v. State, 280 So.2d 13 (Fla. 2d DCA 1973) to be controlling, it is in fact distinguishable in several crucial respects.
In Young, the state presented evidence which this court found to be almost entirely circumstantial and which "was not overwhelming nor all conclusive." 280 So.2d at 13. The evidence in the case sub judice was not primarily circumstantial and was much more conclusive. During closing argument, the prosecutor in Young made the following statement to the jury:
Because the Defendant has not presented a defense today  there's only one thing that we know about this case, and that is that nobody saw him take the money. (emphasis added).
Unlike the situation in the instant case, the trial judge there, after objection by defense counsel, had the statement read back to him in the presence of the jury. This had the effect of emphasizing to the jury the defendant's failure to explain the circumstantial evidence against him. That statement was clearly directed at the defendant. Here, on the other hand, the remarks of the prosecutor were clearly directed at defense counsel and not at the failure of the defendant to testify. The prosecutor was pointing out the failure of defense counsel to specify in his argument which of the possible defenses he argued to the jury he was relying on. Even defense counsel recognized that by couching his objections in terms of "I don't have to prove anything, I don't have to tell the jury or tell anybody else what my defense is." (emphasis added). He consistently repeated his objection to the trial judge in that type language. He never complained that it was a comment on the defendant's failure to do anything.
It has long been held by the courts of this state that the state has a right in a criminal trial to direct the attention of the jury to the posture of the case before the jury. No error is committed as long as it does not comment directly or covertly upon the failure of the accused to testify. Woodside v. State, 206 So.2d 426 (Fla. 3d DCA 1968).
The federal courts have clearly supported the right of the prosecutor to comment on the failure of the defense, as opposed to the defendant, to explain testimony. For example, in United States v. White, 444 F.2d 1274 (5th Cir.), cert. denied, 404 U.S. 949, 92 S.Ct. 300, 30 L.Ed.2d 266 (1971), the court held:

*928 It has long been the law in federal courts that remarks about the defendant's failure to testify constitute reversible error. Such statements infringe on the defendant's presumption of innocence and violate his Fifth Amendment right against self-incrimination by converting silence to evidence of guilt. 18 U.S.C.A. § 3481; Wilson v. United States, 149 U.S. 60, 13 S.Ct. 765, 37 L.Ed. 650 (1893); Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).
The test in determining whether such a transgression has occurred is whether the remark was manifestly intended or was "of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." Samuels v. United States, 398 F.2d 964 (5th Cir.1968), cert. den. 393 U.S. 1021, 89 S.Ct. 630, 21 L.Ed.2d 566 (1969).
The remark here made does not meet that test. The record reveals that when he was interrupted, the prosecutor was attempting to say that the defendant did not have to take the stand in order to rebut the presumption of possession of recently stolen property, but could introduce other evidence. He was trying to point out the necessity for some evidence in the defendant's case to rebut the legal presumption. It does not appear that the jury would have understood the remark otherwise. Luke and Henry v. Wainwright, 431 F.2d 485 (5th Cir.1970); Garcia v. United States, 315 F.2d 133 (5th Cir.1963); Samuels v. United States, supra; Williams v. Wainwright, 416 F.2d 1042 (5th Cir.1969); Parks v. Wainwright, 429 F.2d 1240 (5th Cir.1970).
In any event, with no manifest intention on the part of the prosecutor to comment in such a way as to make defendant's failure to take the stand evidence for jury consideration, and with positive instructions to the jury by the court that nothing was to be considered or presumed from this fact, and in the light of the weight of the evidence, any impropriety in the remark and the way it was made must be held to be harmless error beyond any reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
See also, United States v. Dearden, 546 F.2d 622 (5th Cir.1977).
Finally, this is a classic situation where defense counsel, by his own arguments in throwing out to the jury several alternative theories whereby they could find for the defendant, invites the state to challenge him to tell the jury his theory of defense. Waid v. State, 58 So.2d 146 (Fla. 1952); Pinkney v. State, 142 So.2d 144 (Fla. 2d DCA 1962).
The remarks by the assistant state attorney below were within proper bounds, and the granting of the new trial based thereon was error.
GRIMES, C.J., and HOBSON, J., concur.