417 So.2d 719 (1982)
Michael GAINS, Lonnie Williams and Joseph Edward Williams, a/K/a Milton Kearney, Appellants,
v.
STATE of Florida, Appellee.
Nos. AC-117, AC-119 and AC-120.
District Court of Appeal of Florida, First District.
July 13, 1982.
Rehearing Denied August 19, 1982.
*721 Michael Allen, Public Defender, and Michael M. Corin, Asst. Public Defender, Tallahassee, for appellant Gains.
Thomas D. Treece of Bartlett & Treece, Jacksonville, for appellant Lonnie Williams.
Ronald F. Bennett, Jacksonville, for appellant Joseph Edward Williams.
Jim Smith, Atty. Gen., and Richard A. Patterson, Asst. Atty. Gen., for appellee.
McCORD, Judge.
In this consolidated appeal Michael Gains, Lonnie Williams, and Joseph Edward Williams, a/k/a Milton Kearney, appeal from their respective convictions, after a jury trial, of two counts of armed robbery. Lonnie Williams additionally appeals from a third conviction for armed robbery and a conviction for attempted murder. We affirm as to Gains and Lonnie Williams and reverse as to Joseph Williams.
All three appellants present the following points in this appeal: (1) that the trial court erred in denying their motion for mistrial in that the prosecutor improperly commented on their constitutional right to remain silent; (2) that the trial court erred in failing to instruct the jury that intent to permanently deprive is an essential element of the charge of armed robbery; (3) that the trial court erred in convicting them on the second armed robbery count because that count and the first armed robbery count charged only a single offense; (4) that Section 947.16(3), Florida Statutes, is unconstitutional; (5) that the trial court erred in failing to state with individual particularity why it was retaining jurisdiction over their sentences; and (6) that the trial court erred by imposing sentences upon the appellants based, in part, on their refusal to speak to and cooperate with law enforcement authorities. Michael Gains and Lonnie Williams also assert that they were improperly given a three year mandatory minimum sentence on the second armed robbery count because there was no proof at trial that they actually possessed the pistol which caused the bank teller to part with the victim bank's money. Similarly, Lonnie Williams urges that he may not be given a three year mandatory minimum sentence for the first robbery count as there is no proof he possessed the weapon which caused that bank teller to part with the bank's money. Joseph Williams separately urges error in the trial court's denial of his motion for judgment of acquittal on the two armed robbery counts.
This appeal rises out of a criminal episode which occurred on October 1, 1980, at the Florida First National Bank on Merrill Road in Jacksonville, Florida. At approximately 11 a.m. on that date, three black males, Michael Gains, Lonnie Williams, and *722 a third juvenile (not tried in this cause) entered into the bank and, while brandishing pistols, took approximately $1,065 of the bank's money from the custody of one bank teller, Betty Jean Cook, and something over $26,000 of the bank's money from a second teller, Bonnie Thompson. Thompson and Cook were working at different bank teller windows at the time of the robbery. The testimony of the various witnesses reveals that Lonnie Williams and the juvenile took the money from Cook and that the juvenile and Michael Gains took the bank money from Thompson. While the robbery was in progress, a mailman, John R. Osterhout, unfortunately entered the bank on personal banking business. Lonnie Williams put a gun to his head, forced him to the floor, and took his wallet and its contents.
As the three robbers left the bank, they walked slowly across the parking lot and calmly got into a car. This car had been parked far away from the bank at the end of the parking lot facing outward. While in the parking lot, the three men were not seen to be carrying guns, the masks worn during the robbery, or money. The driver, Joseph Williams, had not been inside the bank and sat casually in the car as the others got in. The car pulled slowly out of the lot, stopping because of traffic and obeying traffic signals.
Meanwhile, a customer at one of the bank's drive-in windows noticed the commotion inside the bank. She followed the car as it left the parking lot and entered into a residential neighborhood, still obeying traffic signals and not speeding. This witness waved down a police car which immediately gave chase.
When the police tailing the appellants first observed their car, it was not violating any traffic laws. As the police pulled closer, the officer noted that the passengers, Gains, Lonnie Williams, and the juvenile, did something unusual:
... . (They) saw me coming down Townsend Boulevard and they turned and starting talking to the driver.
At that point, when they'd made a complete turn onto Townsend Boulevard, the two in the back and Lonnie Williams in the front all laid down inside the vehicle as they approached my patrol car, which at that time I was still northbound coming up on them.
At this point, the officer turned on his lights and pulled in front of the car. The driver initially eluded the officer by driving up into a yard, and a chase ensued. This officer never lost sight of the vehicle during the two-minute chase which was concluded when the car being pursued crashed into another car at the intersection of Lone Star and Samontee. During the chase Lonnie Williams fired his pistol at the officer approximately 15 times, and on several occasions reached into the back seat as if getting aid or ammunition.
Since Joseph Williams' argument regarding the insufficiency of the evidence stands in a somewhat different stead than the other arguments offered by him and the other appellants, we find it appropriate to address this argument first. In the commission of the crime, both the actor and the one who aids and abets him are principals in the first degree and may be charged and convicted of the crime. § 777.011, Fla. Stat. It is not necessary that the aider or abettor be physically present aiding and abetting his partner or partners in the crime. However, he must be sufficiently near or so situated as to aid or encourage or to render assistance to the actual perpetrator. Pope v. State, 84 Fla. 428, 94 So. 865 (1923).
The guilt of an aider or abettor, of course, can be established by circumstantial evidence; however, that evidence must be both consistent with guilt and inconsistent with any reasonable hypothesis of innocence. Williams v. State, 206 So.2d 446 (Fla. 4th DCA 1968); Davis v. State, 90 So.2d 629 (Fla. 1956). Here, it is apparent that Joseph Williams was not an active participant in the armed robbery. Rather, the prosecution's theory implicitly rests on the assumption that he was the "wheelman" for the crime. The evidence that, as the driver of the car, he was a knowing participant in the crime is circumstantial and thus more is needed than a suspicion or *723 belief that under the circumstances, he knew what was occurring. Espinoza v. State, 183 So.2d 560 (Fla. 3d DCA 1966). The mere fact that he fled from the scene after the crime "does not exclude the reasonable inference that (he) had no knowledge of the crime until it actually occurred, and thus that he did not intend to assist in its commission." J.H. v. State, 370 So.2d 1219, 1220 (Fla. 3d DCA 1979). Applying these standards to the facts elicited by the prosecution, we find that Joseph Williams' conviction cannot be sustained on the basis of circumstantial evidence. Considered in a light most favorable to the state's case, the evidence merely places Joseph Williams in the automobile outside the scene of the crime. There is no evidence that he had seen his companions carrying guns [see Williams v. State, 206 So.2d at 449] or that he had heard them discussing the crime prior to its inception. There is no evidence that he could see into the bank and thereby have ascertained the apparent intentions of his companions. There is no showing that he acted as a lookout for the trio. See Pack v. State, 381 So.2d 1199 (Fla. 2d DCA 1980). Further, he drove out of the parking lot at normal speeds while obeying traffic signals. He did not attempt to elude the police until, as we can fairly infer from the evidence, his companions informed him of something. Pack, supra. Moreover, upon being apprehended, he did nothing to resist arrest. Thus, the evidence in this case just as reasonably supports the inference that, although Joseph Williams may have been in the general vicinity of the crime, he had no knowledge of his companions' intentions and attempted to flee only upon being apprised of their actions while in the bank.
The State relies upon Enmund v. State, 399 So.2d 1362 (Fla. 1981), to support the conviction of Joseph Williams. Enmund v. State was a robbery-murder case which construed Section 782.04, Florida Statutes (1973). The court ruled that there was no direct evidence that Enmund was present with the accomplices at the back door where the robbery and murder took place; that the only evidence of the degree of his participation was the jury's likely inference that he was the person in the car by the side of the road near the scene of the crime; that the jury could have concluded that he was there, a few hundred feet away, waiting to help the robbers escape with the money. The court, therefore, held there was sufficient evidence that Enmund was a principal in the second degree, constructively present aiding and abetting the commission of the crime of robbery and, therefore, guilty of murder in the first degree under Section 782.04(1)(a). Unlike the case sub judice, there was evidence in Enmund v. State that Enmund had been at the scene of the crime on an earlier occasion and had commented on the large amount of money carried by the victim. Also, as contrasted to the circumstance that Joseph Williams was parked in the parking lot of a bank in the late morning business hours, Enmund was parked on the side of a rural highway in early morning hours near the scene of the robbery-murder, a scene, as above stated, which he had visited earlier and had commented on the victim's money. Also, unlike the evidence in the present case, there was evidence that the Edmund car drove from the scene "pretty fast" with one or two passengers lying across the back seat.
The evidence adduced at trial sub judice fails to exclude a reasonable hypothesis of innocence and is thus inadequate to convict Joseph Williams as an aider and abettor to the armed robberies. He should have been charged, if at all, as an accessory after-the-fact. See, e.g., Ferguson v. State, 321 So.2d 139 (Fla. 4th DCA 1975). Since the evidence was not sufficient, his convictions for the armed robberies are reversed. Moreover, because the retrial of a defendant whose conviction has been reversed for insufficiency of the evidence would violate the double jeopardy clause of the United States Constitution, which is fully applicable to state criminal proceedings, we have no choice but to direct that he be discharged from further custody for this alleged crime. Chaudoin v. State, 362 So.2d 398, 402 (Fla. 2d DCA 1978). Accord Tibbs v. Florida, ___ U.S. ___, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).
*724 We now turn to the remaining points raised by this appeal. During his closing argument, the prosecutor made the following statement:
We have heard at this point from all of the defense attorneys at least once and one thing is clear to me and I am sure that is clear to you, that they, meaning the defense attorneys want to talk to you about some of the witnesses and their identification and they take pride in one of them saying it was a green shirt and it turns out to be green pants. I think things like this that they have taken real pride in themselves. (sic) But the one thing they don't want to talk to you about and the one thing that they have avoided is not once has anyone explained to us where the sunglasses in the car where they came from; where the baseball cap, the racing hat, the three pistols.
Appellants immediately moved for a mistrial on the grounds that the prosecutor's argument was a direct or indirect comment on the appellants' failure to testify at trial. While noting that these comments were getting dangerously close to improperly commenting on the fact that the appellants did not testify, the trial court denied the motion for mistrial.
We find it necessary to put the above comments in a proper perspective. Officer Taylor, an evidence technician with the Jacksonville Sheriff's Office, testified that he took the following items from the vehicle in which the appellants fled the police:
One stopwatch, three masks, four hats, various colors, one green duffle bag, assorted clothing, shirts, ... . three firearms, a wallet that belonged to Mr. John Osterhout and ... in the green duffle bag $28,472.45.
He also recovered bank papers, sunglasses, a baseball cap, and a racing hat, all of which were introduced into evidence by the state, as were the three pistols.
We find no error in the trial court's denial of the motion for mistrial. "It is proper for a prosecutor in closing argument to refer to the evidence as it exists before the jury and to point out that there is an absence of evidence on a certain issue." White v. State, 377 So.2d 1149, 1150 (Fla. 1980). Moreover, it is patent from the content of the remarks that the prosecutor was referring, not to the appellants' right to remain silent, but to defense counsel's previous statements, a practice which is permitted. See State v. Bolton, 383 So.2d 924 (Fla. 2d DCA 1980). In Bolton, the Second District Court of Appeals adopted the appropriate test for measuring such a remark:
The test in determining whether such transgression has occurred is whether the remark is manifestly intended or was of "such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." (Citations omitted.)
We adopt this test and find that, in view of the evidence and the context in which the disputed remarks were made, they did not constitute comment on the failure of the appellant to take the stand, particularly in light of the court's standard instruction to the jury as to appellants' not testifying.
Appellants next argue that the trial court erred in refusing to instruct the jury on specific intent, i.e., the intent to permanently deprive the owner of property, as an element of the crime of armed robbery. There would appear to be some merit in this argument, for the Florida Supreme Court has held that specific intent is still a requisite element of the crime of robbery. Bell v. State, 394 So.2d 979 (Fla. 1981). Citing Williams v. State, 400 So.2d 542 (Fla. 3d DCA 1981), the state urges that the failure to do so is harmless error. Williams, however, does not so hold. While dicta, in that opinion does imply a harmless error test, the strict holding of that case is that the failure to instruct the jury as to specific intent is not fundamental error, thus permitting it to be urged on appeal though not properly preserved in the trial court. Holmes v. State, 412 So.2d 429 (Fla. 4th DCA 1982) (Owen, dissenting). Here, the issue was properly preserved for review. Thus, we are squarely presented with the issue of whether the failure to instruct as to specific intent can be deemed harmless error. *725 Considering the circumstances of this case, we find that such error was harmless.
Ordinarily, the trial court has the duty to fully instruct the jury as to each essential element of the offense. McClendon v. State, 196 So.2d 905, 906 (Fla. 1967). However,
It appears to be generally, although not universally, established that an omission from the charge in a criminal case of a particular element of the offense or an erroneous instruction with respect thereto will not be regarded as reversible error if from the pleadings and the evidence in the case it is clear that there was no issue between the parties with respect to such element.
Annot., Comment Note  Duty in Instructing Jury in Criminal Prosecution to Explain and Define Offense Charged, 169 ALR 315 (1947), cited approvingly in Williams, at 545. We adopt this view and find there was no genuine issue as to the appellants' intent to permanently deprive the bank of its funds. No defense was proffered by the defendant which would serve to negate this specific intent, unlike Bell.
In Bell itself the omission of a charge on intent was raised below and was directly material to the issues in the case, since the trial judge ... refused to permit evidence or argument concerning the defendant's alleged intoxication on the ground that it was irrelevant to what was thought to be a non-specific intent crime.
Williams, at 543, f.3. Since there was no genuine evidentiary defense, such as intoxication, in this case, we find that appellants have raised but a paper issue in this regard. In reaching this conclusion, we adopt the well-reasoned dissenting opinion of Judge William Owen (Retired) in Holmes, supra. That case, too, involved the charge of robbery with a weapon and a properly preserved request for a jury instruction that intent to deprive the victim is an essential element of the crime. Judge Owen observed:
... . (O)nce the jury concluded (as it obviously did) that appellant and his co-defendant were the culprits and had taken money or other property of value from the person or custody of Mr. Klein by force, violence, assault or putting in fear, it is totally inconceivable and beyond all comprehension that the jury could have failed to find from the evidence that appellant and Morris (co-defendant) had every intent to permanently deprive the victim of the possession, use and enjoyment of the property. I am satisfied beyond all doubt, from an examination of the entire case, that the jury's verdict would necessarily have been the same had the court concluded in its instruction the element of intent to deprive. (Emphasis in original.)
Id., at 431. We, too, find it "totally inconceivable and beyond all comprehension that the jury could have failed to find from the evidence that" appellants had every intent to permanently deprive the bank of its funds. Accordingly, we affirm the judgment of the trial court on this point.
Appellants have also argued the two counts of armed robbery charged only a single offense because the money taken from the two tellers during the robbery was money that belonged to a single victim, the bank. We have recently rejected such an argument. See Brown v. State, 413 So.2d 1273 (Fla. 1st DCA 1982). Appellants' argument regarding the constitutionality of Section 947.16(3), Florida Statutes, has also been conclusively rejected. Borden v. State, 402 So.2d 1176 (Fla. 1981); Arnett v. State, 397 So.2d 330 (Fla. 1st DCA 1981). We have considered the remaining issues on appeal and find them to be without merit.
The convictions and sentences of Lonnie Williams and Michael Gains are affirmed. Joseph Williams' conviction is reversed and the case is remanded with directions that he be discharged from custody.
ERVIN and SHAW, JJ., concur.