469 So.2d 800 (1985)
Caroline Ann FOX, Appellant,
v.
STATE of Florida, Appellee.
No. AU-258.
District Court of Appeal of Florida, First District.
April 11, 1985.
Rehearing Denied June 4, 1985.
Larry D. Simpson, of Davis, Judkins & Simpson, Tallahassee, for appellant.
Wallace Allbritton, Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
Caroline Ann Fox appeals an order adjudging her guilty of robbery, in violation of section 812.13, Florida Statutes (1981), contending that the evidence was legally insufficient to prove beyond a reasonable doubt that she was guilty as charged. We agree and reverse.
The evidence, viewed most favorably to the state's position, proves the following events. About 5:00 a.m. on April 12, 1983, Fox, accompanied by her friend and codefendant, Griffin, drove a small automobile *801 owned by her employer to a Tallahassee twenty-four convenience store. She went inside, bought a bag of Bugle potato chips and a bottle of Tab, joked with the clerk, and then walked out of the store. Some five to ten minutes later, a regular customer named Jones came to the store and purchased a snack. When he arrived, he observed Fox's car parked in front, headed toward the store. When he left, her car had been moved to the side of the store near a dumpster, headed away from the storefront. Fox was in the driver's seat, while Griffin was standing behind the dumpster and appeared to be relieving his bladder. From her location, Fox could not see into the store. Jones encountered difficulty starting his car and returned to the store for help. The clerk went outside with Jones and noticed that Fox and Griffin were now leaning against the fender of Fox's car. Griffin, observing the efforts to pushstart Jones's car, came over to help while Fox stayed at her car. After Jones's car started, the clerk walked back inside the store, followed by Griffin. Griffin then walked to a cooler at the back of the store, stooped down for about thirty seconds, and returned to the clerk standing at the cash register: Holding one hand behind his back, Griffin said that he would shoot the clerk unless he gave Griffin the money in the cash register. No gun was displayed by Griffin. After receiving money from the clerk, Griffin directed him to lie on the floor, and the clerk did so. Approximately fifteen seconds later, the clerk heard a car engine start and deduced that the car properly left the parking lot headed north. The clerk did not hear tires squealing or any other indication of a hasty departure by Fox.
Later that morning, the manager of another convenience store located seven miles away was listening to his police scanner and heard a report of a robbery and the description of the robber. A few minutes later, Griffin entered this store and bought a drink with a dollar bill he pulled from a "big pile of bills" taken out of his pocket. Fox remained in the car. The manager recognized Griffin from the police description and, after Griffin left, notified the sheriff's office. In a short time, Fox and Griffin were stopped and arrested by a deputy. Neither resisted arrest. Fox produced her driver's license and received permission to call her employer, whose car she was driving. Griffin was searched, and some money was found in his boot, including a bill marked by the convenience store for security purposes. There was no indication that any money was found on Fox. Fox still had her bag of Bugle potato chips and Tab. No gun was found in the car or on either Fox or Griffin. The two were taken to the convenience store Griffin had robbed, and the clerk identified them as "the people that [sic] had robbed him earlier."
Fox and Griffin were tried together on the robbery charge, and both were convicted as principals in the first degree. Since Fox was not an actual perpetrator of the robbery, the state necessarily proceeded against her upon the theory that one who "aids, abets, counsels, hires, or otherwise procures such offense to be committed" is a principal in the first degree. § 777.011, Fla. Stat. (1981). To sustain Fox's conviction as an aider and abetter, the state must have proven beyond a reasonable doubt that a robbery was committed, that Fox aided in the commission of it, and that Fox had the specific intent to participate in the crime. Pack v. State, 381 So.2d 1199, 1200 (Fla. 2d DCA 1980). In the absence of direct evidence, the state must necessarily rely on circumstantial evidence to prove her knowledge and intent to participate, and such evidence, to be legally sufficient, must be both consistent with guilt and inconsistent with any reasonable hypothesis of innocence. Gains v. State, 417 So.2d 719, 722-723 (Fla. 1st DCA 1982), pet. for rev. denied, 426 So.2d 26 (Fla. 1983); Williams v. State, 206 So.2d 446 (Fla. 4th DCA 1968).
In Gains, supra, this court reversed the conviction of Joseph Williams for aiding and abetting an armed robbery because the circumstantial evidence merely placed him in an automobile outside the scene of the *802 robbery and did not show that he had seen his three companions carrying guns, or had heard them discussing the crime prior to its commission, or had acted as a lookout for the trio, or attempted to elude the police until after his companions informed him of the robbery. Such evidence, we held, was inadequate to prove the element of intent necessary to support the conviction, stating:
The guilt of an aider or abettor, of course, can be established by circumstantial evidence; however, that evidence must be both consistent with guilt and inconsistent with any reasonable hypothesis of innocence. Williams v. State, 206 So.2d 446 (Fla. 4th DCA 1968); Davis v. State, 90 So.2d 629 (Fla. 1956). Here, it is apparent that Joseph Williams was not an active participant in the robbery. Rather, the prosecution's theory implicitly rests on the assumption that he was the `wheelman' for the crime. The evidence that, as the driver of the car, he was a knowing participant in the crime is circumstantial and thus more is needed than a suspicion or belief that under the circumstances, he knew what was occurring. Espinoza v. State, 183 So.2d 560 (Fla. 3d DCA 1966). The mere fact that he fled from the scene after the crime `does not exclude the reasonable inference that (he) had no knowledge of the crime until it actually occurred, and thus that he did not intend to assist in its commission.' J.H. v. State, 370 So.2d 1219, 1220 (Fla. 3d DCA 1979). Applying these standards to the facts elicited by the prosecution, we find that Joseph Williams' conviction cannot be sustained on the basis of circumstantial evidence. Considered in a light most favorable to the state's case, the evidence merely places Joseph Williams in the automobile outside the scene of the crime. There is no evidence that he had seen his companions carrying guns [see Williams v. State, 206 So.2d at 449] or that he had heard them discussing the crime prior to its inception. There is no evidence that he could see into the bank and thereby have ascertained the apparent intentions of his companions. There is no showing that he acted as a lookout for the trio. See Pack v. State, 381 So.2d 1199 (Fla. 2d DCA 1980). Further, he drove out of the parking lot at normal speeds while obeying traffic signals. He did not attempt to elude the police until, as we can fairly infer from the evidence, his companions informed him of something. Pack, supra. Moreover, upon being apprehended, he did nothing to resist arrest. Thus, the evidence in this case just as reasonably supports the inference that, although Joseph Williams may have been in the general vicinity of the crime, he had no knowledge of his companions' intentions and attempted to flee only upon being apprised of their actions while in the bank.
Id., at 722-23. See also, Davis v. State, 436 So.2d 196, 199 (Fla. 4th DCA 1983); A.Y.G. v. State, 414 So.2d 1158, 1159 (Fla. 3d DCA 1982).
The state's evidence against Fox is legally insufficient since there are reasonable inferences that may be fairly drawn which are clearly consistent with the hypothesis that Fox was unaware Griffin intended to rob the store and, thus, did not possess the requisite criminal knowledge and intent. The gun Griffin intimated to the clerk that he was holding was never produced (if, in fact, it ever existed), so there was no evidence of a gun to alert Fox that criminal activity was about to take place. The fact that the car belonged to Fox's employer could reasonably explain that Fox was driving, not as a "wheelman," but as a responsible employee. Testimony indicating that Griffin was urinating near the dumpster after the car had been moved is consistent with the inference that Fox moved the car to afford Griffin relative privacy. After Griffin robbed the store, fifteen seconds elapsed before the car engine started, and the car left the premises without squealing tires or unusual noises indicating a hasty departure, further suggesting that Fox was unaware of the robbery and in no hurry to depart. From where Fox was in the car, she could not see *803 into the store and, thus, was unable to observe Griffin's activity during the progress of the robbery. Griffin entered the store behind the clerk immediately after helping start Jones's car, without talking further to Fox. When stopped by the deputy sheriff, Fox did not attempt to flee the deputy or resist arrest. No incriminating evidence was found on her person or in her car. The stolen money was found on Griffin's person. About all the state's evidence establishes is that Fox was with Griffin at the scene of the crime. Mere presence at the scene of a crime is insufficient to establish the requisite knowledge and intent to participate in its commission. Gains v. State, supra; Pack v. State, supra; Chaudoin v. State, 362 So.2d 398 (Fla. 2d DCA 1978).
Lincoln v. State, 444 So.2d 27 (Fla. 5th DCA 1984), although certified to be in conflict with Gains v. State, supra, and A.Y.G. v. State, supra, is distinguishable (see concurring opinion of Judge Dauksch, 444 So.2d at 29). The defendant in Lincoln had prior knowledge that her husband was going to commit the robbery and, with the police in pursuit, drove the "getaway car in an elusive manner in an attempt to avoid the police" (444 So.2d at 28). There is no such evidence in the instant case.
The state's evidence supports the following reasonable hypothesis. Fox and Griffin went driving together in her employer's car in the early morning hours and stopped at the store so Fox could buy a snack. Afterward, Fox moved her car near the dumpster to facilitate Griffin's relieving himself in relative privacy. While Fox and Griffin were standing by her car talking innocently, Griffin observed Jones having difficulty starting his car and went over to help Jones and the store clerk push the car. Griffin then assessed the situation and, without communicating his intent to commit robbery to Fox, entered the store unarmed behind the clerk, hesitated for thirty seconds at the rear of the store, and directly approached and robbed the lone clerk. Griffin put the money into his pocket, walked out of the store, got into the car with Fox, and they drove away in a normal manner without Griffin even advising Fox what he had done. Without some other facts from which an inference of knowledge and criminal intent can be drawn, the state's evidence is legally insufficient to establish that Fox was guilty of the offense charged as a principal in the first degree.
The state, citing recent federal court decisions,[1] urges that we abandon the rule requiring that circumstantial evidence must exclude every reasonable hypothesis of innocence and apply, instead, the more liberal standard allowing the jury to choose among several reasonable constructions of the evidence so long as the evidence establishes guilt beyond a reasonable doubt. We decline to accept this concept and fashion a new rule in Florida which would be patently inconsistent with a long line of Florida decisions imposing the stricter, but time-tested, standard.
The conviction is REVERSED and the case REMANDED with directions to discharge the appellant.
ERVIN, C.J., concurs.
BOOTH, J., dissents.
BOOTH, Judge, dissenting:
I would affirm the judgment of conviction below. The jury was entitled to find, based on the evidence adduced, that the co-defendants, Fox and Griffin, who resided at the same address, were seen at 5:00 a.m. on the morning of the robbery with defendant Fox driving and defendant Griffin the passenger in a green Volkswagen Rabbit belonging to the employer of Fox. At that time, the couple was stopped by a policeman for driving without headlights on and given a warning. Thereafter, at 5:30 a.m., the couple arrived at the Lake Bradford convenience store, the scene of the *804 robbery. Defendant Fox entered the store first and alone, leaving defendant Griffin outside. Fox surveyed the premises while purchasing a coke and potato chips and talking with the clerk, and then left. There were no other customers at that time. Five to ten minutes later, a regular store customer, one Jones, entered, talked with the clerk, and left. Jones returned a minute later because of car trouble, and the clerk went out to help him start the car.
Jones testified that, when he arrived at the convenience store, the green Volkswagen was parked facing the store with defendant Fox seated in the driver's seat and that, when he left the convenience store, the car had been moved to head out toward the road with defendant Fox still seated in the driver's seat. The jury was entitled to find that defendant Fox changed the direction of the car to facilitate a getaway from a robbery that had not yet occurred.
After Mr. Jones' car was started, he left, and the clerk returned to the store, followed by defendant Griffin. Shortly thereafter, Griffin went up to the cash register and threatened the clerk unless he handed over all the money. Some $56, mostly in one-dollar bills, was the proceeds of this robbery. The car was heard to crank 15 seconds after the clerk was made to lie on the floor, and the robbers left, apparently headed north.
The green Volkswagen and the couple were next seen some six or eight miles from the scene of the robbery at approximately 6:00 a.m., when they arrived at another convenience store. Again, the driver of the vehicle was defendant Fox. Defendant Griffin entered the store and paid for a cold drink with a dollar bill out of what the clerk described as a "big pile of bills out of his left-hand pocket." There was a "BOLO" out, and the couple was apprehended, returned to the first convenience store, and identified.
Taking all this evidence together, there is no reasonable hypothesis of innocence which the jury was required to honor. This case is unlike Gains v. State, 417 So.2d 719 (Fla. 1st DCA 1982), where the driver of the getaway car stayed outside at all times, and there was no evidence adduced that he was aware that his companions were planning a robbery. The instant case was well and fairly tried, the jury was fully charged on circumstantial evidence, and the evidence adduced was sufficient to show appellant's participation in the crime.

ON MOTION FOR REHEARING
ZEHMER, Judge.
By motion for rehearing the state contends that we have improperly applied the rule that a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence and, consequently, have reached a decision in conflict with Heiney v. State, 447 So.2d 210 (Fla. 1984), and Lincoln v. State, 459 So.2d 1030 (Fla. 1984). Since neither decision was addressed in our original opinion, we feel it would be helpful to address them in this opinion on motion for rehearing.
Our majority opinion reversed appellant's conviction because "the evidence was legally insufficient to prove beyond a reasonable doubt that she was guilty as charged." 469 So.2d at 800 (Fla. 1st DCA 1985). The state's evidence supports a reasonable hypothesis that appellant had no knowledge of Griffin's plans and intent to perpetrate a robbery, and we concluded that "without some other facts from which an inference of knowledge and criminal intent can be drawn, the state's evidence is legally insufficient to establish that Fox was guilty of the offense charged as a principal in the first degree." 469 So.2d at 803. It should be clear, therefore, that our decision to reverse appellant's conviction is predicated entirely upon the absence of competent evidence from which the jury could conclude that Fox knew Griffin was going to commit a robbery when she drove him to the convenience store and waited for him to return to her car. Accordingly, nothing stated in our opinion is inconsistent with the Supreme Court's decisions in Heiney and Lincoln; *805 rather, we are convinced that those decisions support our judgment in this case.
In Heiney the Supreme Court again stated the applicable rule of law as follows:
When a case is based on circumstantial evidence, a special standard of sufficiency of the evidence applies. Jaramillo v. State, 417 So.2d 257 (Fla. 1982). This standard is:
`Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence.' McArthur v. State, 351 So.2d 972, 976, n. 12 (Fla. 1977); Jaramillo v. State; McArthur v. Nourse, 369 So.2d 578 (Fla. 1979). The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and where there is substantial, competent evidence to support the jury verdict, we will not reverse a judgment based upon a verdict returned by the jury. Rose v. State, 425 So.2d 521 (Fla. 1982), cert. den., 461 U.S. 909, 103 S.Ct. 1883, 76 L.Ed.2d 812 (1983). In the present case, we find the evidence supports the jury's verdict that Heiney was guilty of first degree murder and robbery.
447 So.2d at 212. The court thereupon reviewed extensive circumstantial evidence that clearly was sufficient to support the inference that Heiney had murdered the victim.
Closer to the issue presented in this case is Lincoln v. State, 459 So.2d 1030 (Fla. 1984). The Supreme Court affirmed the decision of the Fifth District Court of Appeal cited in our original opinion, Lincoln v. State, 444 So.2d 27 (Fla. 5th DCA 1983), because there was evidence before the jury in Lincoln "from which the finder of fact could conclude that defendant knew that her husband was going to commit a robbery when she drove him to the drugstore." 359 So.2d at 1031. The character of that evidence is discussed at length in Judge Dausch's concurring opinion, 444 So.2d at 29. More importantly, the Supreme Court disapproved "the district court's conclusion that driving a getaway car in an elusive manner in an attempt to avoid the police with nothing more creates a prima facie case from which the finder of fact at trial may properly infer complicity in intent to commit the crime." 459 So.2d at 1032. The Supreme Court also disapproved the fifth district's conclusion that its decision in Lincoln was in conflict with the decisions in A.Y.G. v. State, 414 So.2d 1158 (Fla. 3d DCA 1982), and Gains v. State, 417 So.2d 719 (Fla. 1st DCA 1982), review den., 426 So.2d 26 (Fla. 1983), cited in our original opinion.
In distinguishing A.Y.G. and Gains from Lincoln, the Supreme Court made it quite clear that in a prosecution against a person who does not actually participate in a robbery but is proceeded against as a principal in the first degree for aiding, abetting, or otherwise procuring the offense to be committed, the circumstantial evidence adduced by the state, to be legally sufficient, must support a reasonable inference that the accused had knowledge that the crime was going to be committed and the specific intent to participate in or aid in its perpetration. For only if the evidence is sufficient to establish this inference does it "exclude the reasonable inference that [the accused] had no knowledge of the crime until it actually occurred and thus did not intend to assist in its commission." 459 So.2d at 1031.
Comparing the evidence of prior knowledge in the Lincoln case (see 444 So.2d at 29) to the evidence in this case clearly demonstrates the legal insufficiency of the state's evidence to establish that Caroline Fox had prior knowledge and specific intent to participate in the crime committed by Griffin.[1]
*806 For the foregoing reasons, the state's motion for rehearing is DENIED.
ERVIN, C.J., concurs.
BOOTH, J., dissents.
NOTES
[1] United States v. Bell, 678 F.2d 547 (5th Cir.1982); United States v. Kincade, 714 F.2d 1064 (11th Cir.1983).
[1] The dissent's reference to the fact that Fox and Griffin were seen at 5 o'clock on the morning of the robbery and stopped by a policeman for driving without headlights and given a warning does not support the requisite inference. Fox was stopped within a block of her residence, which was several miles from the convenience store she was charged with robbing.