492 So.2d 719 (1986)
J. Wilbur WEEKS and J. Anthony Weeks, Appellants,
v.
STATE of Florida, Appellee.
Nos. BC-431, BC-433.
District Court of Appeal of Florida, First District.
July 21, 1986.
*720 James P. Judkins, of Davis, Judkins & Simpson, Tallahassee, for appellant J. Wilbur Weeks.
Larry D. Simpson, of Davis, Judkins & Simpson, Tallahassee, for appellant J. Anthony Weeks.
Jim Smith, Atty. Gen., and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for appellee.
NIMMONS, Judge.
Wilbur Weeks and Anthony Weeks appeal their judgments and sentences, both appellants having been convicted after jury trial of two counts of manslaughter and one count of attempted manslaughter. We reverse.
The shooting incident which resulted in the trial of the appellants, Wilbur Weeks and Anthony Weeks, also spawned a separate trial wherein Lester Wells and Wayne Weeks were convicted of second degree murder and attempted second degree murder involving the same victims as in the instant case. Wells and Wayne Weeks were proceeded against as the actual perpetrators of the homicides whereas the appellants herein were proceeded against as aiders and abettors. This Court has recently decided the appeal in the other case. See Wells v. State, 492 So.2d 712 (Fla. 1st DCA 1986). The shooting incident is described in somewhat greater detail in Wells.
The appellants in the instant case and the appellants in Wells are related to each other as indicated in the following diagram. For the purpose of clarity the designation "appellant" is included in the diagram beside the name of the parties in the instant appeal.
 Appellant, Wilbur Weeks -----------------
 | |
 ------------------ |
 | | |
Appellant, Anthony Weeks Wayne Weeks Lester Wells
 (Son) (Son) (Nephew)
Evidence showed, although not uncontradicted, that on the morning of November 10, 1983, Lester Wells and Wayne Weeks, who were on the shore of the Escambia River near McCaskill's fishcamp, attacked, with a fusilade of gunfire, Phillip Wayne Enfinger, James E. Wyche and Billy Dewayne Wyche as the latter three arrived in a boat. The Wyches died in the attack. Enfinger survived.
The State's theory of the appellants' guilt, as aiders and abettors,[1] was that they had purchased weapons and vehicles for Wayne and Lester to use in the commission of the crimes. The State introduced the evidence hereinafter described in an effort to establish that theory.
Anthony registered a homemade boat five days prior to the homicides. He purchased a beige pickup truck two days later. Anthony had been invited to join the Wyches on a camping trip at McCaskill's. Wilbur purchased a quantity of .223 ammunition a few weeks before the homicides and some .380 ammunition from Penney's Hardware store a few days before the homicides. He had also, over a period of time, purchased a .380 pistol for each of his sons and himself. There was testimony that he purchased a clip for a "Ruger Mini-14" although he denied this.
On the morning of the homicides, a "pretty white pickup truck" was seen by a *721 witness at a landing several miles up the river from the crime scene. Another witness identified Wayne as the driver of a boat coming from the direction of the landing and heading in the direction of the crime scene. Anthony's pickup truck and the boat he registered were kept in Wilbur's barn. Some .380 ammunition and .223 ammunition was found at the crime scene, some of which was the same brand as that purchased by Wilbur. Those brands are nationally distributed. None of the ammunition recovered was fired from any weapon known to belong to either of the appellants or to Lester or Wayne. Both .223 and .380 ammunition are popular, widely distributed calibers.
Shortly after the homicides, police came to interview Anthony and Wilbur, who turned over various weapons they owned and accompanied the officers to Wilbur's barn where they "cranked" the beige pickup truck. When asked about the boat Anthony had registered, they said it was missing. Wilbur said he thought other items were also missing. He later reported that no items were missing.
Wayne had picked up a pistol that Wilbur ordered from a local gun shop. When he picked it up, he checked a box on the form which stated he was not under arrest or indictment. This was not true.[2] After the arrest of Wayne and Lester, Wilbur returned to the gun shop and convinced the owner to change the form to reflect Wilbur as the purchaser of the weapon. Later, the police convinced the owner of the shop to tape a telephone conversation with Wilbur. In the taped conversation, the owner of the shop is heard stating that the police wanted him to say that the ammunition found at the scene came from his shop, in response to which Wilbur is heard to say, "Don't budge."
While the credibility of witnesses and the weight of the evidence are matters which are properly left solely to the trier of fact, it is the court's function to determine whether the evidence was legally sufficient to support the guilty verdict. Chaudoin v. State, 362 So.2d 398 (Fla. 2nd DCA 1978); Williams v. State, 206 So.2d 446 (Fla. 4th DCA 1968).
To sustain the appellants' convictions as aiders and abettors of the subject crimes, the state was required to prove beyond a reasonable doubt that: (1) the crimes were committed; (2) the appellants aided in the commission of the crimes, and (3) the appellants had the specific intent to participate in the crimes. Fox v. State, 469 So.2d 800 (Fla. 1st DCA 1985); Hutchinson v. State, 309 So.2d 184 (Fla. 1st DCA 1975); Beasley v. State, 360 So.2d 1275 (Fla. 4th DCA 1978); Pack v. State, 381 So.2d 1199 (Fla. 2nd DCA 1980); and J.H. v. State, 370 So.2d 1219 (Fla. 3rd DCA 1979). The State failed as to each appellant to establish a prima facie case from which the jury could properly infer that the appellants aided and abetted the commission of the subject crimes. The evidence shows, at most, that some property belonging to appellants may have been used as instrumentalities in the commission of the crimes and that Wilbur may have attempted to cover up the crimes of his son, Wayne.
On the evidence presented, the jury could not find appellants guilty without impermissibly stacking inference upon inference.
Where two or more inferences in regard to the existence of criminal intent and criminal acts must be drawn from the evidence and then pyramided to prove the offense charged, the evidence lacks the conclusive nature to support a conviction.
Collins v. State, 438 So.2d 1036, 1038 (Fla. 2nd DCA 1983). See also G.C. v. State, 407 So.2d 639 (Fla. 3rd DCA 1981); Chaudoin v. State, 362 So.2d 398, 402 (Fla. 2nd DCA 1978).
In attempting to build a prima facie case against Anthony, the jury would have to consider testimony that a "pretty white *722 truck" was seen at a landing on the river and that a man answering Wayne's description was seen in a boat on the river and infer from that that Anthony's truck and boat were used in the commission of the crimes. From the inference of the use of these instrumentalities in the crime, and the evidence of their recent purchase, the jury would have to infer that they were used with the permission of Anthony. This is a second level of inference. Finally, the jury would have to infer from these two inferences that Anthony intended that the crimes be committed.
A similar analysis applies to the case against Wilbur. From the evidence that Wilbur purchased ammunition of the same caliber and brand as some of the ammunition found at the scene, the jury would have to infer that the ammunition purchased by Wilbur was, in fact, that which was found at the scene. The jury would have to infer from that inference that the ammunition was used by the perpetrators with Wilbur's permission and that Wilbur intended that the subject crimes be committed. Such requires impermissible pyramiding of inferences.
Circumstantial evidence is not sufficient when it requires such pyramiding of inferences in order to arrive at a conclusion of guilt. Chaudoin v. State, supra at 402; Gustine v. State, 86 Fla. 24, 97 So. 207 (1923). And evidence which leaves one with "nothing stronger than a suspicion" that the appellants committed the subject crimes is, of course, not sufficient. Mayo v. State, 71 So.2d 899, 904 (Fla. 1954); Gains v. State, 417 So.2d 719, 722 (Fla. 1st DCA 1982).
We, therefore, have no occasion to address the current debate over the proper roles of the trial judges and juries, respectively, in situations where the evidence is susceptible of both reasonable hypotheses of guilt and reasonable hypotheses of innocence. See Fox v. State, 469 So.2d 800 (Fla. 1st DCA 1985); Fowler v. State, 492 So.2d 1344 (Fla. 1st DCA 1986). Buenoano v. State, 478 So.2d 387 (Fla. 1st DCA 1985); United States v. Bell, 678 F.2d 547 (5th Cir.1982).
Reversed and Remanded to the trial court with instructions to vacate the judgments and sentences and to dismiss the subject charges.
BOOTH, C.J., and SHIVERS, J., concur.
NOTES
[1] Under Section 777.011, Florida Statutes (1983), persons who aid, abet, counsel, hire, or otherwise procure a crime to be committed may be charged as principals in the first degree, regardless of whether they were actually or constructively present at the commission of the crime. See also State v. Lowery, 419 So.2d 621 (Fla. 1982).
[2] In connection with a prior incident, Wayne had been charged with the alleged kidnapping and attempted murder of Billy Dewayne Wyche, one of the victims in the current homicide. See Wells v. State, supra.