362 So.2d 398 (1978)
Clark Dean CHAUDOIN, Appellant,
v.
STATE of Florida, Appellee.
No. 77-1263.
District Court of Appeal of Florida, Second District.
August 23, 1978.
*399 Ed Leinster, Orlando, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellee.
DANAHY, Judge.
Appellant and his brother James were tried together and found guilty of murder in the second degree and aggravated battery. Appellant urges three grounds for reversal of his conviction, one of which is that the evidence against him was insufficient as a matter of law. We find that point to have merit.[1]
The charges against appellant and his brother arose from a shooting which resulted in the death of one victim and the wounding of another. The thrust of the state's case was that the brother, James, pulled the trigger and that appellant aided and abetted James in that action.[2]
The only evidence of appellant's complicity was circumstantial. While the credibility of the witnesses and the weight of the evidence are matters within the sole province of the jury, it is the proper function of this court to review the evidence and determine whether it was sufficient as a matter of law to support the verdict of guilty. Williams v. State, 206 So.2d 446 (Fla. 4th DCA 1968).
In weighing the sufficiency of circumstantial evidence, the test to be applied is whether that evidence is not only consistent *400 with guilt but also inconsistent with any reasonable hypothesis of innocence. Head v. State, 62 So.2d 41 (Fla. 1952); Mayo v. State, 71 So.2d 899 (Fla. 1954); Davis v. State, 90 So.2d 629 (Fla. 1956). In reversing a conviction in Davis v. State, our supreme court said:
Evidence which furnishes nothing stronger than a suspicion, even though it would tend to justify the suspicion that the defendant committed the crime, it is not sufficient to sustain conviction. It is the actual exclusion of the hypothesis of innocence which clothes circumstantial evidence with the force of proof sufficient to convict. Circumstantial evidence which leaves uncertain several hypotheses, any one of which may be sound and some of which may be entirely consistent with innocence, is not adequate to sustain a verdict of guilt. Even though the circumstantial evidence is sufficient to suggest a probability of guilt, it is not thereby adequate to support a conviction if it is likewise consistent with a reasonable hypothesis of innocence. So it is in the instant case we find implicit in the circumstantial evidence offered for conviction a possibility of innocence which is equally as strong as the possibility of guilt.
Id. at page 631.
We will summarize here all of the circumstances which the jury could have found from the evidence adduced at trial, viewed in the light most favorable to the state.
On the night in question, appellant and James entered the bar of the Old Town Inn and there confronted one Kenneth Bagwell. Bagwell was not a stranger to them; there were bad feelings between the Chaudoin brothers and Bagwell, and the brothers probably came to the bar for the purpose of seeking Bagwell out. They engaged in an argument with him concerning a shooting some two years previously, and James said to Bagwell that he had a grudge to settle. Appellant and James picked a fight with Bagwell in which both participated, although James was the prime instigator.
Observing appellant and James fighting with Bagwell, Charles Ross and Rupert Tuten joined the fray. They and Bagwell succeeded in throwing the brothers out the front door of the bar. Outside, appellant punched Ross in the nose and then took something from his pocket which looked like a knife. Thereupon Ross went to his truck and got his revolver. He, Tuten and Bagwell then re-entered the bar, together with another bar patron who had joined the group outside.
Four to eight minutes later (the witnesses varied in their estimates) two gun shots were heard followed by approximately eight more. The first two shots were fired through the front doorway of the bar with the door open, the remainder through the closed wooden door. Bagwell was killed and Tuten wounded.
Just before the shots were fired, a witness saw the front door open and observed the silhouette of a man's face, a streak of black hair, and a piece of what appeared to be pipe. (James' hair is black; appellant's hair is lighter). The same witness heard Bagwell say, just before the shots, "The sons of bitches have come back with guns." Another witness heard "They've come back, they've got a gun." A third witness heard "Get down, they've got a damn rifle."
Upon hearing the shots, Ross exited the building through a side door with his revolver. As he did so he saw a person he could not identify running behind the building to his right. He went around to the front of the bar and there saw James standing twenty feet or more out in the parking lot with a rifle pointed at the front door and firing. He confronted James, whereupon James threatened to shoot him too. Ross then shot at James and James ran across the road to an orange grove. Ross waited, and about ten minutes later he saw James coming back. James said to Ross "I'm shot to pieces, don't shoot any more." Ross then told James to leave. James got in his truck and drove away. All this occurred in the parking lot in front of the bar, which was lighted. All this while, Ross looked for appellant but never saw him.
*401 No one else saw appellant outside the bar after he and James were ejected and the ejecting group came back in. A witness who lived next door testified that he saw someone run across the road from the bar, and also saw someone on the corner of his lot by a telephone pole. He observed the latter individual get into a truck and pick up whoever it was that was running from the bar. The witness was not able to identify either individual. He testified that the man he described as running across the road was not carrying anything, but that the man behind the telephone pole had something in his hand which could have been anything.
Later, two rifles were recovered in some bushes outside the trailer in which appellant and James lived, and it was determined that shell casings found in the parking lot of the bar were fired from one of these. The purchase of that rifle was traced to James. No fingerprints were found on either weapon. There were ten shell casings found in the parking lot more than thirty feet from the front door of the bar.[3]
On this evidence, the state presented its case to the jury that James was guilty of murder and aggravated battery for having actually done the shooting, and appellant was equally guilty for having aided and abetted James in the shooting.
In the commission of a crime, both the actor and one who aids and abets him are principals in the first degree and may be charged and convicted of the crime. Both are equally guilty. Section 777.011, Florida Statutes (1977). There are two essential conditions which must be met to result in the status of aider and abetter. Such a person is one who has the intent that the crime be committed and who, by acts or words, assists or encourages another in the actual commission of the crime. Ryals v. State, 112 Fla. 4, 150 So. 132 (1933). It is not necessary that the aider or abetter be physically present aiding and abetting his partner in the crime; it is sufficient if, pursuant to a previous understanding, he is sufficiently near and so situated as to abet or encourage, or to render assistance to, the actual perpetrator. Pope v. State, 84 Fla. 428, 94 So. 865 (1923).
As in any other criminal case, the guilt of an aider or abetter can be established by circumstantial evidence. Williams v. State, 206 So.2d 446 (Fla. 4th DCA 1968); Lockett v. State, 262 So.2d 253 (Fla. 4th DCA 1974); Rosson v. State, 319 So.2d 64 (Fla. 2d DCA 1975). Such evidence, however, must meet the test first set forth above; that is, it must be both consistent with guilt and inconsistent with any reasonable hypothesis of innocence. Evidence which establishes nothing more than a suspicion, or even the probability of guilt, is not sufficient. Davis v. State, supra.
We hold that the evidence in this case does not meet the standard by which the sufficiency of circumstantial evidence is to be measured in a criminal prosecution. Certainly the evidence is consistent with the hypothesis of guilt put forth by the state  that appellant and James went to the bar at the Old Town Inn looking for Kenneth Bagwell and, acting in concert, picked a fight with Bagwell, against whom they had a grudge; that after they were ejected from the bar, appellant continued to act in concert with James by helping him to procure the rifle, opening the bar door so that James could shoot through it, and otherwise assisting in the shooting, after which James picked up appellant in the truck and drove away. However, several reasonable hypotheses of innocence are equally consistent with the evidence.
The fact that the bar door was opened by someone supports equally the conclusion that that someone was James as it does the conclusion that that someone was appellant. True, when James was seen by Ross standing outside with the rifle, he was some distance from the door. But there were two series of shots and he could have retreated *402 after firing the first two shots through the open doorway and before firing the remainder through the door. The number and location of the shell casings do not foreclose the reasonableness of that conclusion. There is simply not enough to support the state's argument that someone besides James must have opened the door and that person must have been appellant.
Even assuming that it could reasonably be inferred that the unidentified running figure outside the bar was appellant, that inference would establish only that appellant was present in the vicinity when the shooting took place. Mere presence at the scene of the crime, without more, is not sufficient to establish either an intent to participate or an act of participation. Ryals v. State, supra.
To find appellant guilty, an impermissible succession of inferences would be necessary. First, it would have to be inferred that appellant remained in the vicinity outside the bar after the fight. Second, that inference would have to be used to support the further inference that appellant's purpose in remaining was to participate in the shooting and that he acted in furtherance of that purpose by some word or deed. Circumstantial evidence is not sufficient when it requires the pyramiding of assumption upon assumption in order to arrive at the conclusion necessary for a conviction. Gustine v. State, 86 Fla. 24, 97 So. 207 (1923).
The evidence in this case just as reasonably supports the inference that, although appellant may have remained in the vicinity, he did so with no intention whatsoever of participating in a shooting. Even if appellant was the running person seen by the witnesses, he could have been fleeing the scene to avoid any participation in the shooting. A willingness, indeed an eagerness, to fight does not necessarily equal a willingness to kill. Hard feelings against a person shared by two brothers may incite one to shoot but not necessarily incite the other to help him. Concerted action in a fist fight does not necessarily produce concerted action to kill. Conclusions of guilt from these circumstances are reasonable, but certainly do not exclude reasonable hypotheses of innocence.
The evidence was not sufficient to sustain appellant's conviction and that conviction is, therefore, reversed. Recent decisions of the United States Supreme Court have established that the retrial of a defendant whose conviction has been reversed for insufficiency of the evidence would violate the double jeopardy clause of the United States Constitution, which is fully applicable to state criminal proceedings. Therefore, we are required to direct that appellant be discharged. Burks v. U.S., 437 U.S. ___, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); Greene v. Massey, 437 U.S. ___, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).
Reversed with directions that appellant be discharged.
RYDER, Acting C.J., and PIERCE, WILLIAM C., J. (Ret.), concur.
NOTES
[1] The other two points raised by appellant concern the denial of a motion to suppress and an alleged discrepancy between the evidence and the statements in a bill of particulars furnished by the state. These points have been considered and rejected.
[2] James' separate appeal from his conviction has been affirmed by this court without opinion. Chaudoin v. State, No. 77-1241 (Fla. 2d DCA, June 30, 1978).
[3] The testimony regarding the number and location of the shell casings, and the number of shots actually fired, is not at all clear.