STATE of Missouri, Respondent,

v.

**Andrew W. SIX, Appellant.**

**Andrew W. SIX, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 70958.**

Supreme Court of Missouri,
En Banc.

March 5, 1991.

Rehearing Denied April 9, 1991.

Henry B. Robertson, St. Louis, for appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

COVINGTON, Judge.

Appellant Andrew Six appeals his conviction of murder in the first degree, § 565.020, RSMo 1986, for which he was sentenced to death. He also appeals from the overruling of his postconviction relief motion. Affirmed.

Viewed in the light most favorable to the verdict, *State v. Guinan*, 665 S.W.2d 325, 327 (Mo. banc), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984), the facts are as follows: Don and Stella Allen resided with their two daughters, Christine, seventeen years old and pregnant, and Ka-

thy, age twelve, in Ottumwa, Iowa. Both Christine and Kathy were special education students. On Tuesday, April 7, 1987, while Mr. Allen was hospitalized following a heart attack, appellant and his uncle, Donald Eugene Petary, went to the Allen's trailer-home, indicating an interest in a pickup truck that the Allens were attempting to sell to raise money to permit Mr. Allen to travel to Texas for open heart surgery.

On Friday, April 10, 1987, after purchasing a roll of duct tape and two packages of plastic gloves, appellant and Petary returned in Petary's station wagon to the Allen home. Although the hour was late, Mrs. Allen agreed to accompany the men to test drive the truck. Mr. Allen, who had been discharged from the hospital, remained at home. In the truck, Six overpowered Mrs. Allen; Petary taped her hands behind her back. Upon hearing that 17–year–old Christine, six months pregnant, was among the occupants of the trailer that evening appellant stated: "That's the one I want to rape." When the trio returned to the trailer, Mr. Allen was waiting outside. Appellant held a butcher knife to Mrs. Allen's throat while Petary, also brandishing a knife, ordered Mr. Allen to return to the trailer. Once inside, appellant taped Mr. Allen's hands. Appellant took Mr. and Mrs. Allen into a bedroom where he taped their mouths and forced Mr. Allen to his knees.

Petary guarded the elder Allens while appellant retrieved Kathy from the front bedroom. Observing that Kathy was quite frightened, appellant removed the tape from Mrs. Allen's mouth and told her: "You tell her to shut up or I'll kill you all right now." Petary departed briefly to Christine's room, where he kissed her and threatened to kill her if she used the telephone. Appellant then went to Christine's room and raped her. He threatened to kill her if she did not remain quiet. Appellant subsequently returned with Christine to another bedroom where the other members of the Allen family waited. With the point of his knife, appellant threw overalls to Christine and to Kathy and ordered them to dress.

Appellant ordered Petary to take the two girls to the station wagon. After Petary and the girls left the residence, appellant took Mr. and Mrs. Allen's wallets, then attempted to force them outside. Mr. Allen and appellant struggled briefly, and the knife was knocked momentarily from appellant's hands. Appellant soon regained control. Appellant told Mr. Allen: "If you try anything again I'll kill her [Mrs. Allen] right here." The three exited the trailer with Mr. Allen in the lead and Mrs. Allen following, appellant behind her holding a knife to her throat. Mr. Allen ran for help. Christine simultaneously managed to break free and run. Appellant cut Mrs. Allen's throat from the right corner of her jaw to the left side of her jaw, causing exposure of her carotid artery. Appellant then entered the Petary vehicle and he and Petary drove away, taking Kathy.

Petary and appellant drove to the home Petary shared with Betty Six in a relationship resembling a common law marriage and exchanged the station wagon for appellant's Mercury Lynx. Petary and appellant then drove to the home of a friend of Petary to collect a partial debt of $60.00. Appellant, Petary, and Kathy then proceeded south on U.S. Highway 63 toward Missouri, discarding the Allens' wallets along the way. The following evening, Texas state troopers arrested appellant and Petary in east Texas. With information acquired from Petary, law enforcement officers found Kathy's body in a ditch near a culvert on a gravel road off U.S. 63 in Schuyler County. She wore the bib overalls, but her underwear had been stuffed between her legs. Her throat had been cut, severing her jugular vein and carotid artery, causing her to bleed to death. A hair found in her underwear was consistent with appellant's. When appellant was arrested his forearms were scratched and there was a bloody scab on his left ear.

Appellant denied killing Kathy and made statements incriminating Petary. At one point, after indicating he did not want to say anything further, appellant said: "I know I'm gone for life." Later appellant asked whether he and Petary were charged

with the same crimes. After being told that they were, appellant replied: "Well, we are both guilty." The jury found appellant guilty of murder in the first degree. The evidence supports the jury's verdict on guilt.

In the penalty phase of trial the state presented evidence that a bumper sticker on appellant's car read: "I'm the person your mother warned you about." Mrs. Allen testified that appellant stated he wanted to rape Christine. Christine testified that appellant raped her and that a fall during her escape caused premature contractions which required hospitalization. Appellant presented the testimony of Petary's daughter and stepdaughter that Petary molested them when they were young. Appellant also called his mother, sisters and an uncle to testify in mitigation of punishment. The jury was unable to agree on punishment. The court imposed a sentence of death, finding that the evidence established beyond a reasonable doubt as aggravating circumstances that the murder of Kathy Allen was committed for the purpose of avoiding a lawful arrest of appellant, § 565.032.2(10), RSMo 1986, that the murder of Kathy Allen was committed while appellant was engaged in the perpetration of kidnapping, § 565.032.2(11), RSMo 1986, and that Kathy Allen was a potential witness in a pending investigation of the kidnapping of Kathy Allen and was killed as a result of her status as a potential witness. § 565.032.2(12), RSMo 1986. The court further found beyond a reasonable doubt that appellant forcibly raped Christine Allen on or about April 10, 1987.

■ In his direct appeal, appellant contends that the trial court erred in failing to instruct on the lesser included offense of second degree felony murder because there was evidence to support an acquittal of first degree murder and conviction on the lesser offense. The trial court is obligated to charge the jury with respect to an included offense when there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense. § 556.046.2, RSMo 1986; *State v. Stepter*, 794 S.W.2d 649, 652 (Mo.

banc 1990). *See also Beck v. Alabama*, 447 U.S. 625, 635–43, 100 S.Ct. 2382, 2388–92, 65 L.Ed.2d 392 (1980).

■ It is unnecessary to decide whether the evidence supported a second degree felony murder instruction; appellant suffered no prejudice. "The appropriate MAI–CR 3d requires that the jury find the defendant not guilty of first degree murder and then conventional second degree murder before it may consider second degree felony murder." *State v. Petary*, 781 S.W.2d 534, 544 (Mo. banc 1989), *vacated and remanded*, —— U.S. ——, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990), *reaffirmed*, 790 S.W.2d 243 (Mo. banc), *cert. denied*, —— U.S. ——, 111 S.Ct. 443, 112 L.Ed.2d 426 (1990). *See also State v. Griffin*, 756 S.W.2d 475, 485 (Mo. banc 1988), *cert. denied*, 490 U.S. 1113, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989). The trial court submitted a conventional second degree murder instruction. Because the jury failed to find second degree murder, appellant was not prejudiced by absence of a submission of second degree felony murder. Appellant's additional contention that his eighth and fourteenth amendment rights were violated under *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 2382 (1980), is likewise refuted by the submission of the conventional second degree murder instruction. *See Petary*, 781 S.W.2d at 544.

Appellant contends that the trial court erred in overruling his motion for acquittal at the close of all the evidence. Appellant argues that the evidence supported felony murder only. Appellant asserts that his statements that Petary killed Kathy without appellant's knowledge were unrefuted, and the events at the trailer did not establish deliberation but an equally valid inference that the victim would later be released.

■ Appellant's contention is incorrect. To convict appellant as an accomplice to first degree murder the prosecution must prove that he aided in the crime with the purpose of promoting the commission of that crime. *Petary*, 781 S.W.2d at 539, and cases cited therein. Viewed in the light most favorable to the state, the evi-

dence shows that appellant accompanied Petary on April 7, 1987, to the Allens' with the stated purpose of purchasing the truck. Appellant and Petary were together when they purchased the duct tape later used to bind Mr. and Mrs. Allen. Appellant grabbed Mrs. Allen and held a butcher knife to her throat. Appellant gave the orders inside the trailer. He taped Mr. Allen's hands and both Mr. and Mrs. Allen's mouths. Appellant retrieved Kathy from the front bedroom. Appellant raped Christine. Appellant took the Allen's wallets. Appellant held the knife to Mrs. Allen's throat as they exited the trailer. Appellant cut Mrs. Allen's throat as Mr. Allen ran for help. There is sufficient evidence for the jury to have found that appellant aided in the crime with the purpose of promoting the commission of that crime.

Appellant relies upon cases holding that when the circumstances show that a codefendant may have killed the victim without the defendant's participation, the evidence is insufficient to prove conventional murder. The cases are inapposite because the evidence in this case reflects defendant's participation. Appellant's references to *State v. Reese,* 319 N.C. 110, 353 S.E.2d 352 (1987), and *Chaudoin v. State,* 362 So.2d 398 (Fla.App.1978), likewise fail to support appellant's contention. In *Reese* there was no direct evidence from which the jurors could draw inferences. In *Chaudoin,* in order to find the defendant guilty of acting in concert, it was necessary to "pyramid" assumption upon assumption. *Chaudoin,* 362 So.2d at 402. No such need exists here. To reiterate, the evidence is sufficient for the jury to have found that appellant aided in the crime with the purpose of promoting the commission of that crime.

■ Appellant contends that the sentence of death is unconstitutional because it violates the rule of *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). *Enmund* holds that the Eighth Amendment bars imposition of the death penalty upon the class of murderers who did not themselves kill, attempt to kill, or intend that a killing take place or that lethal force will be employed. The *En-*

*mund* requirement is satisfied in this case. To be convicted of a capital crime in Missouri, one must knowingly cause the death of another after deliberation, § 565.020.1, RSMo 1986, or with the purpose of promoting the commission of the murder, aid, agree to aid, or attempt to aid another in planning, committing, or attempting to commit the murder, § 562.041.1(2), RSMo 1986. Instruction 5 required the jury to find that appellant acted with the "purpose of promoting or furthering the commission of that murder in the first degree." The jury so found, and the evidence supports the jury's finding. Acting with the purpose of promoting or furthering the death of another satisfies the intent requirements of *Enmund. State v. Kilgore,* 771 S.W.2d 57, 68 (Mo. banc), *cert. denied,* —— U.S. ——, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989).

Appellant contends that the trial court erred in granting the state's challenge for cause of venirewoman Edinger. Ms. Edinger first stated that she experienced personal problems with imposing the death penalty and could not consider imposing the death penalty under any circumstances. The defense then attempted to rehabilitate Ms. Edinger. After significant hesitation, she stated that she could consider all the possible punishments upon which she would be instructed. Later Ms. Edinger indicated that her feelings had changed and stated: "I really don't think I'd want to have a part in deciding." Appellant asserts that venirepersons should not be disqualified if they can set aside their scruples and follow the law, and that reluctance to serve is never a cause to strike. Appellant asserts that Ms. Edinger evidenced emotional involvement, nervousness, and a tendency to take the task seriously, but not an inability to follow the law.

■ Appellant's argument is without foundation. The trial court possesses broad discretion in determining the qualifications of prospective jurors, and its ruling on a challenge for cause will not be disturbed on appeal unless it constitutes a clear abuse of discretion and a real probability of injury to the complaining party. *State v. Wheat,* 775 S.W.2d 155, 158 (Mo.

banc 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 744, 107 L.Ed.2d 762 (1990). The standard for determining when a prospective juror may be excused for cause because of his or her views on capital punishment is whether the juror's views would " 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985), *quoting Adams v. Texas,* 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980). Ms. Edinger first expressed that she could not impose the death penalty. Although the trial court initially believed that Ms. Edinger had been rehabilitated, he changed his mind after observing her final, somewhat tearful, responses and stated: "It became apparent to me that she should be excused for cause." There is no error on this point.

■ Appellant alleges the trial court erred in submitting four aggravating circumstances to the jury. Instruction 16, patterned on MAI–CR 3d 313.40, based on § 565.032.2, RSMo 1986, read in part:

In determining the punishment to be assessed ... you must first unanimously determine whether one or more of the following aggravating circumstances exist:

1. Whether the murder of Kathy Allen was committed while the defendant was engaged in the attempted commission of another unlawful homicide of Stella Janet Allen.

.    .    .    .    .

2. Whether the defendant murdered Kathy Allen for the purpose of the defendant receiving money or any other thing of monetary value from Kathy Allen or another.

3. Whether the murder of Kathy Allen was committed for the purpose of avoiding a lawful arrest of defendant.

4. Whether the murder of Kathy Allen was committed while the defendant was engaged in the perpetration of kidnapping.

.    .    .    .    .

5. Whether Kathy Allen was a potential witness in a pending investigation of the kidnapping of Kathy Allen and was killed as a result of her status as a potential witness.

Appellant challenges the submission to the jury of aggravating circumstances 1, 2, 3 and 5. He contends that circumstances 1 and 2 were not supported by the evidence and that circumstances 3 and 5 are identical to circumstance 4. Appellant contends that he was prejudiced by the submission of these circumstances in that the jury might have recommended a sentence of life imprisonment had it been given fewer aggravating circumstances to consider.

This Court has previously rejected similar arguments on the basis that they rely on mere speculation. *State v. Sandles,* 740 S.W.2d 169, 172–73 (Mo. banc 1987), *cert. denied,* 485 U.S. 993, 108 S.Ct. 1303, 99 L.Ed.2d 513 (1988). Furthermore, the record reveals that evidence was adduced to support submissions of these aggravating circumstances. Mere submission is not improper and no prejudice could have resulted from the submissions. *See State v. Oxford,* 791 S.W.2d 396, 401 (1990).

Appellant's related challenge to the trial court's finding of two aggravating circumstances and its imposition of the death penalty is considered below in conjunction with this Court's independent review.

Appellant asserts that the trial court erred in overruling his objection to admission, during the penalty phase, of evidence of the wording of his bumper sticker: "I'm the person your mother warned you about." Appellant claims the inflammatory nature of the bumper sticker outweighed its probative value, and that its introduction subjected him to cruel and unusual punishment.

■ This Court does not agree with appellant's contention. The trial court has discretion during the punishment phase of trial to admit whatever evidence it deems helpful to the jury in assessing punishment. The jury may consider not only the nature and circumstances of the crime but also the character of the defendant. *State*

*v. Lingar,* 726 S.W.2d 728, 739 (Mo. banc), *cert. denied,* 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987). The trial judge in this case made clear the fact that he was admitting the wording of the bumper sticker under his broad discretion to admit evidence in the punishment phase. He believed the evidence relevant to defendant's character. The alleged significance of the bumper sticker did not go unchallenged. Appellant adduced testimony from his sister that the sticker was on the car when purchased. The bumper sticker was evidence of the representations appellant chose to make about himself whether he placed the sticker on the bumper or merely did not remove it after purchase. It was for the jury to determine the weight of this evidence. Appellant's argument on the point is further weakened by the fact that the trial judge sentenced appellant and is presumed not to have been affected in sentencing by arguably prejudicial evidence. *State v. McMillin,* 783 S.W.2d 82, 96 (Mo. banc), *cert. denied,* — U.S. —, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990).

Appellant contends that the trial court committed plain error in submitting Instruction 19, patterned after MAI–CR 3d 313.44. Appellant asserts that the language of the instruction was reasonably likely to be read by the jury mistakenly to require a unanimous finding of each mitigating circumstance, thus preventing consideration of all relevant mitigating circumstances. The constitutionality of MAI–CR 3d 313.44 and instructions patterned on it has been repeatedly challenged and upheld. *See, e.g., State v. Petary,* 790 S.W.2d 243, 244–46 (Mo. banc), *cert. denied,* — U.S. —, 111 S.Ct. 443, 112 L.Ed.2d 426 (1990); *Schneider v. State,* 787 S.W.2d 718, 721–22 (Mo. banc), *cert. denied,* — U.S. —, 111 S.Ct. 231, 112 L.Ed.2d 186 (1990); *Clemmons v. State,* 785 S.W.2d 524, 531 (Mo. banc), *cert. denied,* — U.S. —, 111 S.Ct. 229, 112 L.Ed.2d 183 (1990).

In a related contention appellant claims the postconviction motion court clearly erred in denying his *Rule 29.15* motion alleging ineffective assistance of counsel for failure to object to MAI–CR 3d 313.44. Clearly an objection to the instruction would have been futile. Counsel is not deemed ineffective for declining to make a non-meritorious objection. *Clemmons,* 785 S.W.2d at 529.

■ Appellant next asserts that the trial court erred in submitting Instruction 21, patterned after MAI–CR 3d 313.48, and Verdict Form C, patterned after MAI–CR 3d 313.58(c). Appellant contends that to advise the jurors that the trial court will fix punishment if the jurors are unable to reach a decision violates the Eighth Amendment, and the Due Process and Equal Protection clauses of the United States Constitution.

As an "accurate statement of a potential sentencing alternative" this instruction and verdict form do not violate any of the substantive limitations placed on the capital sentencing process by the Eighth and Fourteenth Amendments. *California v. Ramos,* 463 U.S. 992, 1009–14, 103 S.Ct. 3446, 3457–60, 77 L.Ed.2d 1171 (1983). The Court in *Ramos* held that a capital sentencing jury's consideration of the governor's power to commute a life sentence is not prohibited by the federal constitution because it merely provided accurate information to the jury for its deliberation in selecting an appropriate sentence. The reasoning of *Ramos* applies equally to the facts of the present case. *See also McMillin,* 783 S.W.2d at 104.

Appellant's sole equal protection claim is that no other class of defendants is subject to the instruction at issue. Appellant's claim is semantically precise but substantively incorrect. MAI–CR 3d 312.02, submitted in other criminal cases, provides that the jury may be instructed that the court will fix the punishment if, after due deliberation, the jury is unable to agree on punishment.

■ In relation to the foregoing allegation, appellant contends that the postconviction court clearly erred in denying his amended motion on this point. Appellant's contention fails on three bases: a matter decided on direct appeal may not be relitigated in postconviction relief proceedings even if movant offers a different theo-

ry, *Schlup v. State*, 758 S.W.2d 715, 716 (Mo. banc 1988); constitutional objections to jury instructions are properly raised on direct appeal and not cognizable in postconviction proceedings absent exceptional circumstances, *Roberts v. State*, 775 S.W.2d 92, 96 (Mo. banc 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1506, 108 L.Ed.2d 640 (1990); and counsel cannot be deemed ineffective for declining to make a non-meritorious objection. *Clemmons*, 785 S.W.2d at 529.

Appellant contends that the trial court erred in denying appellant's successive motions for continuance. Appellant asserts that counsel did not have time to read all of the discovery, visit Iowa, take depositions, or obtain psychiatric records or a mental evaluation.

The grant or denial of a motion for continuance is within the sound discretion of the trial court. *State v. Nave*, 694 S.W.2d 729, 735 (Mo. banc 1985), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 901 (1986). Appellant has not met his burden to show abuse of discretion. Trial counsel entered his appearance on July 14, 1987, and observed appellant's federal kidnapping trial in Iowa in September, 1987. Counsel testified during the *Rule 29.15* hearing that he had opportunities to talk with appellant and his attorney during the trial, that he called the attorney after the trial and that, as of September 29, 1987, he "had substantially everything" that the federal defense attorney had. Counsel described the federal trial as the "best discovery I could possibly get." Counsel reviewed all of the material from the federal trial before the April 12, 1988, preliminary hearing in the present case. By that time he had also directed his investigator to "start all over again from scratch," including investigation in Iowa. Counsel received responses to his discovery requests from the state in May, 1988. Co-counsel entered his appearance on May 10, 1988. The trial was initially set for July 11, 1988. On June 14, 1988, counsel sought a continuance to a date in September or October. The motion was denied following a hearing on June 21, 1988, but the court set a new trial date of July 25, 1988. The trial judge indicated his willingness to hear motions "evenings ... early mornings ... whatever it takes on my part." On July 12 and July 21, 1988, counsel again sought continuances to September or October. The court denied both motions. Additional motions were also made and denied on the first day of trial. During the *Rule 29.15* hearing counsel remarked that the trial judge "indicated a couple of times that he wasn't going to grant continuances just so we could have fishing expeditions," and counsel conceded that that was "exactly what we wanted a continuance for because this was a death case and we needed to do a little more fishing." The trial court did not abuse its discretion in refusing to grant more than a two week continuance.

Section 565.035.3, RSMo 1986, mandates independent review by this Court in order to determine:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;

(2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in subsection 2 of section 565.032 and any other circumstance found;

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence and the defendant.

This Court has considered the record and finds no evidence that the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor.

As to the review of whether the evidence supports the finding of a statutory aggravating circumstance, appellant contends that the trial court erred in finding the existence of two aggravating circumstances. After the jury was unable to agree on punishment, the trial judge found the following statutory aggravating circumstances:

1. that the murder of Kathy Allen was committed for the purpose of avoiding a lawful arrest of defendant,

2. that the murder of Kathy Allen was committed while the defendant was engaged in the perpetration of kidnapping, and

3. that Kathy Allen was a potential witness in a pending investigation of the kidnapping of Kathy Allen, and was killed as a result of her status as a potential witness.

§ 565.032.2(10), (11) and (12). The trial judge also found the nonstatutory aggravating circumstance that defendant committed forcible rape of Christine Allen.

▆▆ Appellant challenges the finding by the trial court of aggravating circumstances 1 and 3. Appellant argues that because he and Petary knew that at least two of the Allens had escaped and could identify Petary and possibly appellant, killing the victim would not aid their escape. The record, however, shows that Kathy Allen was murdered during the course of the escape to Texas. In addition to being able to identify appellant and Petary, the victim could have described appellant's vehicle and, possibly, the proposed destination of appellant and Petary. The evidence supports a finding that Kathy Allen was killed, in part, to prevent the arrest of appellant. The evidence also supports the finding of the third aggravating circumstance. Kathy was killed not only to prevent an imminent arrest, but also to foreclose any future testimony against appellant.

Under its function of independent review, this Court finds that the evidence supports the trial judge's finding of all four aggravating circumstances.

▆▆ For purposes of § 565.035.3(3), this Court has examined those capital murder and first degree murder cases in which death and the alternative sentence of life imprisonment have been submitted to the jury and the sentence has been affirmed on appeal. This Court concludes that the penalty imposed in this case is not excessive or disproportionate to the penalties imposed in similar cases, considering the crime, the strength of the evidence and the defendant. The evidence in this case shows that appellant raped Christine Allen, a seventeen year old special education student who was six months pregnant, robbed her family, attempted to murder her mother by cutting her throat, kidnapped Kathy Allen, a twelve year old special education student, and, in an attempt to avoid arrest and eliminate a witness, murdered Kathy Allen by cutting her throat. The cases most similar to this case are: *State v. Petary*, 781 S.W.2d 534 (Mo. banc 1989), *vacated and remanded*, —— U.S. ——, 110 S.Ct. 1800, 108 L.Ed.2d 931, *reaffirmed*, 790 S.W.2d 243 (Mo. banc), *cert. denied*, —— U.S. ——, 111 S.Ct. 443, 112 L.Ed.2d 426 (1990); *State v. Kilgore*, 771 S.W.2d 57 (Mo. banc), *cert. denied*, —— U.S. ——, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989); *State v. Foster*, 700 S.W.2d 440 (Mo. banc 1985), *cert. denied*, 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986); and *State v. Williams*, 652 S.W.2d 102 (Mo. banc 1983). The sentence of death is not excessive or disproportionate.

Appellant appeals the denial of his *Rule 29.15* motion for postconviction relief. The movant has the burden of proving his grounds for relief by a preponderance of the evidence. *Rule 29.15(h)*. This Court's review of a denial of postconviction relief is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous. *Rule 29.15(j)*. The findings and conclusions are deemed clearly erroneous only if a full review of the record leaves the appellate court with the definite and firm impression that a mistake has been made. *Sidebottom v. State*, 781 S.W.2d 791, 795 (Mo. banc 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3295, 111 L.Ed.2d 804 (1990).

▆▆ This Court first addresses appellant's contention that the motion court clearly erred in refusing to consider appellant's second and third amended motions and in overruling his motion for leave to file further amendments. Appellant timely filed a *pro se* motion. Motion counsel sought and received an extension of time in which to file an amended motion, pursuant to *Rule 29.15(f)*, and timely filed an amended motion. The motion court denied appellant's motion for leave to file additional

amended motions out of time and refused to allow his second amended motion to be filed. A third amended motion was filed after the evidentiary hearing and was not considered by the motion court. As appellant concedes, this Court has held that the time limitations of *Rule 29.15* are valid and mandatory and the trial court is without authority to give additional time beyond that provided by *Rule 29.15(f)*. *Day v. State*, 770 S.W.2d 692, 695 (Mo. banc), *cert. denied sub nom. Walker v. Missouri*, — U.S. —, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989). The motion court did not clearly err.

The state notes that appellant's first amended motion was not properly verified and urges that this Court refuse to review the points originally asserted there. Appellant's amended motion contains his notarized signature but does not state that appellant has listed all grounds for relief known to him. He nevertheless seeks review. Under these circumstances this Court complies with appellant's request for review of claims proffered in the first amended motion but by doing so finds that appellant waives any ground for relief known to him that is not listed in that motion.

■■■■ Appellant alleges several instances of ineffective assistance of counsel. To show that counsel's assistance was so defective as to require reversal of a conviction or death sentence, the movant must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In order to prevail on a claim of ineffective assistance of counsel, the movant must satisfy both the performance prong and the prejudice prong; if the movant fails to satisfy either prong, the reviewing court need not consider the other. *Sidebottom v. State*, 781 S.W.2d at 796. Counsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2065. The movant must also overcome the presumption that the challenged action was sound trial strategy. *Id.* at 689, 104 S.Ct. at 2065. To show prejudice, the movant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068. The movant has the burden of proving his grounds for relief by a preponderance of the evidence. *Rule 29.15(h)*.

■■■■ Appellant argues that trial counsel was ineffective in failing to object to statements made during voir dire. The prosecutor informed each of the two jury panels that questions were asked during voir dire so that those chosen as jurors could "give the parties a fair and impartial hearing," including the state, the defendant and "the victim of this crime, a young, twelve year old, special education student by the name of Kathy Allen." Appellant claims that these comments were inflammatory and denigrated the constitutional trial rights of the accused. In response the motion court noted that a mere reference to the victim, as opposed to proof of acts of violence against the victim, would not inflame the jury, observing that appellant did not assert that the remarks actually did inflame the jury. The motion court found no prejudice. In the absence of a fuller explication by appellant, neither does this Court. Appellant has not carried his burden. The motion court's conclusion is not clearly erroneous.

■■■■ Appellant also complains of his counsel's performance during portions of the state's direct examination. The prosecutor attempted to elicit the following from members of the victim's family: from Mrs. Allen testimony regarding the facts that the victim and her sister Christine were in a special education program, that Christine was six months pregnant, and that Mr. Allen had a heart condition; from Mr. Allen testimony regarding his heart condition; and from Christine Allen testimony regarding her status as a special education student and her pregnancy. Appellant contends both that he was unaware of the Allens' circumstances and that the special circumstances were not relevant to guilt or

sentencing. With the exception of the final question to Christine, counsel objected either to the question or to the response. Appellant nevertheless complains that counsel did not sufficiently object or failed to include the points in the motion for new trial.

The motion court determined that the evidence was relevant to the state's theory that appellant desired to prey on helpless victims. In other testimony Mrs. Allen testified that appellant and Donald Petary were at the Allen trailer a few nights before the murder when Mrs. Allen and her daughters returned from visiting Mr. Allen in the hospital. Mrs. Allen and Christine both testified that they were acquainted with Donald Petary, appellant's uncle. Mrs. Allen testified that appellant knew that Kathy Allen was involved in Special Olympics. Christine's pregnancy was obvious. It is reasonable to infer that appellant was aware of these circumstances, all of which were relevant because they served to substantiate the state's theory that the appellant and Petary sought out helpless victims. *Petary*, 781 S.W.2d at 541. Counsel cannot be deemed ineffective for failure to make a nonmeritorious objection, *Clemmons*, 785 S.W.2d at 529, nor is he ineffective in failing to preserve nonmeritorious points for review.

■ Appellant alleges ineffective assistance of counsel during direct examination of FBI agent Norman Townsend. The prosecutor asked Agent Townsend whether appellant evidenced any concern for the victim. After Agent Townsend answered, "No," counsel objected to the question and the court asked the prosecutor to rephrase the question. The prosecutor later asked Agent Townsend whether appellant indicated any remorse or sadness for what happened to Kathy Allen. Before the witness could answer, counsel said, "I—well, okay, I don't have any objection." Appellant contends counsel was ineffective in making a late objection to the first question and for purposely aborting his objection to the other. Appellant asserted in his amended motion that the testimony was irrelevant. Appellant's contention is incor-

rect. Evidence of lack of remorse counters appellant's theory that Donald Petary, not appellant, was responsible for the murder. Appellant also asserts that Townsend's testimony constituted an impermissible comment on appellant's post-arrest silence. In this regard the motion court found that appellant failed to demonstrate that the comment constituted a reference to appellant's post-arrest silence. This Court agrees. Again, appellant has failed to meet his burden. The finding is not clearly erroneous.

■ Appellant contends that counsel was ineffective in failing to elicit testimony that appellant told the Allens they would be taken out of town and released. Mrs. Allen testified that when Kathy "kept telling him that she had to go to her Special Olympics," appellant told her, "Don't worry, you'll be able to go to Special Olympics." Appellant contends, however, that counsel could have elicited far stronger evidence that homicide was not the original plan and may ultimately have been Petary's alone. He bases his contention in part upon the fact that a newspaper article quoted Mrs. Allen as saying that appellant told the family, "All we're going to do is take you out of town." Also in a federal trial of Donald Petary, there was a record of testimony to that effect. In concluding that counsel was not ineffective, the motion court noted that counsel's strategy was to limit, insofar as possible, evidence of the incidents occurring in Iowa. The court also noted that appellant's statement to the victim regarding the Special Olympics allowed counsel to argue absence of plan or deliberation. Counsel's trial strategy was not unsound, and the motion court's conclusion is not clearly erroneous.

■ In another allegation of ineffective assistance, appellant contends trial counsel failed fully to investigate and present available mitigating evidence. Appellant contends that counsel should have offered in the penalty phase evidence of his vocational training, his efforts to find employment and enter the military, and his marriage to an older woman with three children. He further contends that counsel should have

offered evidence of physical and emotional abuse of him by his stepfather, his repeated references to other adults as his parents, his positive response to good treatment, and his kindness to his retarded sister. There is no doubt that counsel has a duty to make a reasonable investigation of possible mitigating evidence or to make a reasonable decision that such an investigation is unnecessary. *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066. He did so here. Counsel testified that his strategy was to portray appellant as a "human being" who had people who cared about him. He dispatched the investigator to Iowa to interview potential mitigating witnesses. Counsel testified that it was his strategy to avoid presenting too much evidence of the fact that appellant was disadvantaged; counsel feared that this evidence might be used negatively, particularly in light of the heinous nature of the crime. Seven witnesses testified for appellant during the penalty phase: Donald Petary's daughter and stepdaughter, three of appellant's sisters, appellant's uncle Walter Six, and Carolyn Six, appellant's mother. The motion court found that counsel "did investigate the case through his investigator," and "did confer with and was aware of the evidence available from all known witnesses." The motion court concluded that counsel determined in an objectively reasonable manner which evidence would be most beneficial to appellant during the penalty phase and was not ineffective. The motion court's conclusion that counsel's determinations constituted reasonable trial strategy is not clearly erroneous.

■ Appellant contends that trial counsel was ineffective in failing to obtain a competency examination of Christine Allen. The motion court found that counsel knew of no legal mechanism through which to have the witness evaluated and concluded counsel was not ineffective. Counsel testified in the evidentiary hearing that Christine was fairly articulate, responded appropriately to questions, and did not appear in any way incapacitated. There is no indication from her testimony that she was not competent to testify. It was not unreasonable for counsel not to have sought an

evaluation of Christine. The motion court did not clearly err.

In a related point, appellant argues that the motion court erred in denying his motion for a competency evaluation of Christine. An evaluation of Christine Allen, whatever its results, would not have shown trial counsel's performance to be deficient. The motion court did not clearly err in denying the motion.

Appellant asserts that the motion court clearly erred in overruling his motions for continuance of the evidentiary hearing and for neurological evaluation of appellant. Appellant claims that there was insufficient time for counsel to contact and depose witnesses and to obtain various records, and that an expert witness needed additional time to prepare.

■ The motion court is required to conduct a hearing on a postconviction motion within sixty days of the date of the order granting a hearing. *Rule 29.15(g)*. The motion court may continue the hearing upon a showing of good cause. *Rule 29.-15(h)*. Appellant's *pro se* motion was filed on March 13, 1989. Motion counsel entered his appearance on March 20, 1989, and filed an amended motion and request for hearing on May 18, 1989. The motion court set the evidentiary hearing for July 10, 1989. Neither appellant nor counsel appeared on that date. The hearing was finally conducted on November 28, 1989. Motions for continuance were filed on July 24, November 17, November 21, and November 28, 1989. Counsel had represented appellant for more than eight months at the time of the hearing. A second attorney entered an appearance at least six months before the hearing. The motion court conducted the hearing more than six months after the request for hearing was filed. Counsel had adequate opportunity to prepare. The motion court did not abuse its discretion in denying the continuances. *See Schlup v. State*, 758 S.W.2d 715, 716 (Mo. banc 1988).

■ As to the matter of evaluation of appellant, motion counsel sought to have appellant examined by a clinical psychologist. Counsel argued to the motion court

that the evaluation would produce evidence relevant to an allegation in the amended motion that appellant "has a history of head injuries and a family history of neurological problems.... Counsel expects that this evaluation may produce evidence of organic brain dysfunction, a factor which could have been used in mitigation and/or possibly at the guilt phase." Prior to the hearing the motion judge granted a writ of habeas corpus *ad testificandum*, but then withdrew it upon objection by the Department of Corrections. The court informed counsel that appellant could be examined at the institution at any time with proper notice. Counsel, however, filed a motion to transport appellant to St. Louis for an evaluation, along with an affidavit by the examiner stating that his equipment could not be moved. Appellant relied solely on the examiner's affidavit, which the court found not to be credible. The court denied the motion. The court would have permitted an examination. Its refusal to allow appellant to be transported to the psychologist's office was not clearly erroneous.

Appellant contends that trial counsel was rendered ineffective by the trial court's denial of his motions for continuance. The motion court refused to consider this claim, finding it to be a "novel assertion to induce the court to consider court error in a post-conviction motion rather than on direct appeal." This Court has addressed the denial of the motions for continuance in review of the direct appeal. The motion court did not err in declining to consider this point.

Appellant included for the first time in his amended 29.15 motion a claim that women were substantially under-represented on Clay County jury venires and that this under-representation denied him a jury chosen from a fair cross section of the community as guaranteed by the Sixth Amendment. The motion court properly ruled that appellant's claim was not cognizable in a 29.15 proceeding, and that he nonetheless failed in his proof. Challenges to the jury panel should be made before trial. *State v. Bynum*, 680 S.W.2d 156, 160 (Mo. banc 1984). Appellant neither filed a motion to quash the venire panel nor

preserved the issue in his motion for new trial. The motion court will not be burdened with claims that should properly be addressed on direct appeal except where fundamental fairness requires otherwise, and then only in rare and exceptional circumstances. *Walls v. State*, 779 S.W.2d 560, 564 (Mo. banc 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990); *Roberts*, 775 S.W.2d at 96. A review of the record reveals that no such exceptional circumstances are presented here.

The judgments are affirmed.

BLACKMAR, C.J., ROBERTSON, RENDLEN, HIGGINS and HOLSTEIN, JJ., and MORGAN, Senior Judge, concur.

BILLINGS, J., not sitting.