PER CURIAM.
Appellant, Donna Lord, appeals her conviction of first-degree murder and life sentence. We affirm all issues, and address only that raising the sufficiency of the evidence to go to the jury.
On the morning of October 4, 1988, while the victim, Raddie Lord, was sleeping in a dark room with the shades drawn, appellant knelt between the bed and the wall and shot her husband in the back with a 12-gauge shotgun. The bird shot passed through the victim’s vital organs into his heart, and he died almost immediately. Appellant’s hypothesis of innocence was that she left for *818 work early that morning but returned to the bedroom to get some change on the dresser. She accidentally knocked against something, causing the shotgun that had been leaning against the wall to fall. As she grabbed for the gun, it accidentally discharged, killing her husband.
The defense argues that the effect of the state’s evidence was to require the jury to draw inferences by pyramiding assumption upon assumption in order to arrive at a conclusion necessary for conviction, a result prohibited by the rule stated in Gustine v. State, 86 Fla. 24, 28, 97 So. 207, 208 (1923); Harrison v. State, 104 So.2d 391, 394 (Fla. 1st DCA 1958); Torres v. State, 520 So.2d 78, 80 (Fla. 3d DCA 1988); and Chaudoin v. State, 362 So.2d 398, 402 (Fla. 2d DCA 1978). We disagree. The record demonstrates that the state presented competent evidence which was contrary to the defense’s theory of the facts, and thereby permitted the jury to decide issues of fact rather than make assumptions that were not supported by the evidence.
The victim was found lying on his right side, with a shotgun wound several inches to the left of his spine near or above his waist. His legs were bent forward from the waist and hips. A flattened pillow lay on the bed behind his back. The defense contends that the first assumption the jury was asked to make was that the victim’s body was in the same position at the time it was examined as when the victim was shot. It maintains that the evidence was equally consistent with the inference that the victim’s body was in a different position when shot, as he may have rolled his left upright shoulder back upon hearing a noise and then rolled forward upon being struck by the shot, or that the defendant or someone else may have moved the body at some time following the shooting. From our review of the evidence, we cannot conclude that the state asked the jury simply to assume that the victim’s position had not changed in the face of evidence which supported an equally plausible inference to the contrary. In our judgment, the state adduced competent evidence supporting the hypothesis that the body had not moved.
In this regard, the testimony of Dr. Bona-facio Floro, a medical examiner in Duval County, was critical concerning the possible movement of the victim. In answer to the prosecution’s question whether his findings would be different if the facts revealed that the victim had rolled forward following the impact, Floro replied that he did not think such movement could have occurred, because, otherwise, he would have seen blood smudging over the area of the bed where the victim was shot, and there was none. He noted that all of the blood was found in one place on the bed near the right side of the victim’s back; the blood having dripped straight down the decedent’s back with none transferred, which was consistent with the victim’s position as depicted in the photographs.
Floro also agreed that if Lord had rolled back slightly before he was shot, the pellets would have penetrated through the inside of his body toward his right shoulder rather than his left, but that Flora’s examination showed that ten percent of the shot went into the left side of the wound and eight percent to the right, with the remainder “straightaway.” He found that the pattern of shot was not consistent with Lord’s first having turned, received the shot, and then rolled forward.
On cross-examination, Dr. Flora agreed that it was possible the body had been moved, but “we can’t prove it.” He opined that if Lord had rolled slightly to his left, his body might have moved slightly from the impact of the shot, but not significantly.
The defense states that the second assumption the prosecution asked the jury to make was that the defendant’s shotgun was in a horizontal position at the time it was fired, based on the assumed position of the body. As previously observed, the state first presented evidence negating any reasonable hypothesis that the body had been moved, and then submitted evidence regarding why it considered the shotgun was fired in a horizontal position, parallel to the bed. Therefore, the state did not ask the jury to assume the positions of the body and the gun without supporting proof, and the defense *819 presented no evidence supporting a contrary reasonable hypothesis.
For example, Dr. Floro testified that the barrel of the gun was parallel to the long axis of the victim’s body (head to toe), and essentially level with the wound in the victim’s body or slightly below, meaning that the wound and the gun’s barrel were approximately the same distance from the floor. His conclusion was based on an abrasion found at the lower edge and the middle portion of the wound. Dr. Floro was able to determine from the location and size of the abrasion that the shot entered the body at a 45-degree angle. Additionally, he observed that the pellets found in the body had moved toward Lord’s head, whereas, in his opinion, if the gun had been discharged at an angle lower than the victim, they would have moved more toward his left side. Indeed, he opined that if the gun were fired at such an angle, some of the pellets would probably have struck the pillow behind the victim’s back, and none were found there. Finally, he noted that the pellets traveled through the left side of Lord’s back toward his heart, and the heart was at the same level from the floor as the wound. There was no cross-examination on this point.
David Williams, a crime laboratory analyst with the Florida Department of Law Enforcement, examined the body at the crime scene and offered further support to Dr. Floro’s opinion regarding the position of the shotgun. Williams testified that in order for the shot to have penetrated the victim’s body in the manner that it was in fact struck, the gun stock could not have been near the floor. He opined that the muzzle of the gun had to have been placed on a level or horizontal plane with Lord’s body, because of the position of the pillow behind Lord’s back, as shown in the photographs. In other words, the angle of the shot would necessarily have been level in order for it to go over rather than through the pillow. Williams opined that he did not believe the pillow behind the victim had been moved following the shooting, because the victim’s body was partially lying on both the pillowcase and the pillow. Moreover, he saw no evidence that the pillow had been moved.
The defense further posits, based on the state’s second assumption that the gun was in a horizontal position when fired, that the jury was then asked to assume that the defendant was kneeling when the gun was fired, an assumption which was critical to the state’s proof of premeditation. It continues that, on the contrary, the gun could have been placed in a horizontal position at the time it discharged had the defendant grabbed it while it was falling. The defense also points out that the state relied on the absence of recoil damage to the wall, but that the state could not rule out the possibility that the gun struck the soft slippers on the floor.
We cannot find evidence in the record supporting the theory that the gun could have been accidentally discharged from a horizontal position. Defendant’s expert in accident reconstruction, Dr. James Wattle-worth, a civil engineer, testified that the gun discharged at “an upward angle ... up to twenty-five degrees, which is a pretty substantial upward angle,” when the defendant reached for it. As to the recoil evidence, Williams testified that if the weapon had been fired accidentally, rather than placed against defendant’s shoulder, it would have recoiled either onto the wall or the carpet, causing a tear, or it would have knocked over a pair of boots that were instead found standing upright on the floor next to where the gun was found. On cross-examination, he said that the gun could not have recoiled onto the slippers on the floor, unless it were shown that the slippers were damaged.
In our opinion, the state did all that it was required to do pursuant to the standard approved by the Florida Supreme Court in State v. Law, 559 So.2d 187, 189 (Fla.1989), which is
not ... to “rebut conclusively every possible variation” of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant’s theory of events. Once that threshold burden is met, it becomes the jury’s duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt.
*820 (Emphasis added.) (Footnote and citation omitted.)
We conclude that the evidence, although entirely circumstantial, was legally sufficient to support appellant’s conviction.
AFFIRMED.
ERVIN and BARFIELD, JJ., concur.
ZEHMER, C.J., dissents with opinion.